# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| AMERICAN SUSTAINABLE BUSINESS COUNCIL, | § § § | |
| *Plaintiff,* | § | |
| | § | CIVIL ACTION NO.  1-24-CV-1010 |
| v. | § § | |
| GLENN HEGAR, in his official capacity as Texas Comptroller of Public Accounts; and KEN PAXTON, in his official capacity as Attorney General of Texas, | § § § § | |
| *Defendants.* | | |

---

## DEFENDANTS' MOTION TO DISMISS AND RESPONSE TO PLAINTIFF'S FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

---

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

JAMES LLOYD
Deputy Attorney General for Civil Litigation

KIMBERLY GDULA
Division Chief, General Litigation Division

WILLIAM H. FARRELL
Assistant Attorney General
Attorney-In-Charge
Texas Bar No. 00796531
Federal ID No. 21733
Office of the Attorney General
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Telephone:  (512) 936-2650
Facsimile:  (512) 320-0667

**ATTORNEYS FOR DEFENDANTS,**
GLENN HEGAR, in his official capacity as Texas Comptroller of Public Accounts, and KEN PAXTON, in his official capacity as Attorney General of Texas

# TABLE OF CONTENTS

TABLE OF CONTENTS …………………………………………………………………… ii

TABLE OF AUTHORITIES ………………………………………………………… iv

INTRODUCTION ………………………………………………………………….. 1

BACKGROUND ……………………………………………………………………… 2

SUMMARY OF THE ARGUMENT ……………………………………………… 3

ARGUMENT ………………………………………………………………………… 3

I.  Plaintiff Lacks Standing ……………………………..………………………………... 3

II.  Sovereign Immunity Bars Plaintiff's Claims…………………………………..………… 6
    A.  Sovereign Immunity Bars Plaintiff's Claims Against the Comptroller ……………... 7
    B.  Sovereign Immunity Bars Plaintiff's Claims Against the Attorney General ………… 8

III.  Plaintiff's Claims Fail on the Merits ……………………………………………...… 9
    A.  The First Amendment Does Not Apply to the Procurement Provision ……………..... 9
    B.  SB 13 is Neither Overbroad Nor Vague …………………………………………… 11
    C.  SB 13 Does Not Implicate the First Amendment …………………………………… 15
    D.  Even if SB 13 Regulates Speech, it is Still Constitutional …………………………. 16
    E.  SB 13 Does Not Compel Protected Speech ………………………………………… 17
    F.  SB 13 Does Not Infringe on Freedom of Association ……..………………………… 19
    G.  SB 13 Does Not Violate Plaintiff's Right to Access Courts ………………………… 20

CONCLUSION ……………………………………………………….……………... 21

CERTIFICATE OF SERVICE ……………………………………………………… 21

# TABLE OF AUTHORITIES

## Cases

*A&R Engineering v. Scott,*
  72 F.4th 685 (5th Cir. 2023) …………………………………………………………… 5

*Abdullah v. Paxton,*
  65 F.4th 204 (5th Cir. 2023) …………………………………………..………….. 6

*Abdullah v. Paxton,*
  No. 1:20-CV-1245-RP, 2021 WL 5181614 (W.D. Tex. Nov. 8, 2021), *report and recommendation adopted in part,* No. 1:20-CV-1245-RP, 2022 WL 1272024 (W.D. Tex. Mar. 25, 2022)
  …………………………………………………………………………………..… 7

*Air Evac EMS, Inc. v. Texas,*
  851 F.3d 507 (5th Cir. 2017) …………………………………..……………… 4

*Ala. Educ. Ass'n v. State Sup. of Educ.,*
  746 F.3d 1135 (11th Cir. 2014) ………………………………………….…..… 13

*Ark. Times LP v. Waldrip as Tr. of Univ. of Ark Bd. of Trs.,*
  37 F.4th 1386 (8th Cir. 2022) ………………………………………………….... 9, 10, 11

*Arkansas Times LP v. Waldrip,*
  988 F.3d 453 (8th Cir. 2021) ………………………………………………..… 18

*Arkansas Times LP v. Waldrip,*
  362 F. Supp.3d 617, 624 (E.D. Ark. 2019) …………………………………………… 18

*Baird v. State Bar of Arizona,*
  401 U.S. 1 (1971) …………………………………………………….………… 19

*Barnes v. Glen Theatre, Inc.,*
  501 U.S. 560 (1991) …………………………………………………...………… 17

*Book People, Inc. v. Wong,*
  98 F.4th 657 (5th Cir. 2024) …………………………………………………… 16

*Broadrick v. Oklahoma,*
  413 U.S. 601 (1973) …………………………………………………………... 12

*Cannon v. Univ. of Chicago,*
  441 U.S. 677 (1979) ……………………………………………………….…… 20

*Christopher v. Harbury,*
  536 U.S. 403 (2002) …………………………………………………………………... 21

*City of Austin v. Paxton,*
  943 F.3d 993 (5th Cir. 2019) ……………………………………….…..… 4, 7

*Clapper v. Amnesty Int'l USA,*
  568 U.S. 398 (2013) ………………………………………………………… 4, 5

*Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.,*
  473 U.S. 788 (1985) ………………………………………………………… 9

*Doe I v. Landry,*
  909 F.3d 99 (5th Cir. 2018) ……………………………………………............... 14

*Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Constr. Trades Council,*
  485 U.S. 568 (1988) ………………………………………………………... 12

*Ex parte Young,*
  209 U.S. 123 (1908) …………………………………………….……… 3, 4, 6, 7, 8

*Fairchild v. Liberty Indep. Sch. Dist.,*
  597 F.3d 747 (5th Cir. 2010) …………………………………………… 11, 12

*Freedom Path, Inc. v. I.R.S.,*
  913 F.3d 503 (5th Cir. 2019) …………………………………….……… 14

*Grove City Coll. v. Bell,*
  465 U.S. 555 (1984) ……………………………………………...……… 18

*Gustafson v. Alloyd Co., Inc.,*
  513 U.S. 561 (1995) ………………………………………………………... 13

*Haverkamp v. Linthicum,*
  6 F.4th 662 (5th Cir. 2021) (per curiam) ...……………………………………….. 3

*Hersh v. United States ex rel. Mukasey,*
  553 F.3d 743 (5th Cir. 2008) ……………………………………………...… 11, 12

*Hill v. Colorado,*
  530 U.S. 703 (2000) ………………………………………….……………… 15

*Holder v. Humanitarian Law Project,*
  561 U.S. 1 (2010) ……………………………………………………….…… 14

*Hunt v. Washington State Apple Advert. Comm'n*,
432 U.S. 333 (1977) …………………………………………………..… 3

*In re Gee*,
941 F.3d 153 (5th Cir. 2019) (per curiam) …………………………….……... 14

*In re Millwork*,
631 S.W.3d 706 (Tex. 2021) (per curiam) ………………………………………… 13

*J&B Ent. v. City of Jackson*,
152 F.3d 362 (5th Cir. 1998) …………………………………………………… 17

*K.P. v. LeBlanc*,
627 F.3d 115 (5th Cir. 2010) …………………………………...……………… 7

*Kimel v. Florida Bd. of Regents*,
528 U.S. 62 (2000) ………………………………………………………………... 6

*King St. Patriots v. Tex. Dem. Party*,
521 S.W.3d 729 (Tex. 2017) ……………………………………………………… 12

*Langan v. Abbott*,
No. 1:20-CV-275-RP, 2021 WL 466124 (W.D. Tex. Feb. 8, 2021) ……………………………… 6

*LLEH, Inc. v. Wichita County*,
289 F.3d 358 (5th Cir. 2002) …………………………………………….…… 17

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) ……………………………………………….……………… 3

*Mi Familia Vota v. Abbott*,
977 F.3d 461 (5th Cir. 2020) …………………………………………….…… 6

*Mi Familia Vota v. Ogg*,
105 F.4th 313 (5th Cir. 2024) ……………………………………………….. 8

*Morris v. Livingston*,
739 F.3d 740 (5th Cir. 2014) …………………………………….……………... 7, 8

*Nat'l Fed'n of the Blind of Tex., Inc. v. Abbott*,
647 F.3d 202 (5th Cir. 2011) …………………………………………….…… 15

*NCAA v. Smith*,
525 U.S. 459 (1999) ……………………………………………………………... 18

*Osterberg v. Peca,*
   12 S.W.3d 31 (Tex. 2000) …………………………………………………..… 12

*Roark & Hardee LP v. City of Austin,*
   522 F.3d 533 (5th Cir. 2008) ……………………………………………..……… 14

*Roberts v. U.S. Jaycees,*
   468 U.S. 609 (1984) …………………………………………………………...… 19

*Rumsfeld v. Forum for Academic and Institutional Rights, Inc.,*
   547 U.S. 47 (2006) ……………………………………………………………..… 9, 10

*Shrimpers & Fishermen of RGV v. Tex. Comm. on Env't Quality,*
   968 F.3d 419 (5th Cir. 2020) …………………………………………………… 4

*Tex. Dem. Party v. Abbott,*
   961 F.3d 389 (5th Cir. 2020) …………………………………………..………. 6, 7, 8

*Texas v. Johnson,*
   491 U.S. 397 (1989) …………………………………………………………… 10

*TransUnion LLC v. Ramirez,*
   594 U.S. 413 (2021) …………………………………………………………… 3

*United States v. Arnold,*
   740 F.3d 1032 (5th Cir. 2014) …………………………………………..…….. 18

*United States v. Clark,*
   582 F.3d 607 (5th Cir. 2009) …………………………………………..………. 14

*United States v. Hansen,*
   599 U.S. 762 (2023) …………………………………………………………… 12

*United States v. Kaluza,*
   780 F.3d 647 (5th Cir. 2015) ………………………………………………… 13

*United States v. O'Brien,*
   391 U.S. 367 (1968) …………………………………………….……………....… 16, 17

*United States v. Raines,*
   362 U.S. 17 (1960) …………………………………………………………… 15

*Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*,
 455 U.S. 489 (1982) ………………………………………………..…….. 11

*Virginia v. Hicks,*
 539 U.S. 113 (2003) ……………………………………………….……. 15

*Wash. State Grange v. Wash. State Republican Party*,
 552 U.S. 442 (2008) ……………………………………………………... 12

*Wooley v. Maynard,*
 430 U.S. 705 (1977) …………………………………………………...…….. 18

**Constitutional Provisions and Statutes**
U.S. Const:
      art. III …………………………………………………..…….…… 3, 4, 5, 18
      amend. I …………………………………...…………... 1, 3, 9, 10, 11, 15, 16, 17, 18, 19, 20

50 U.S.C. § 1702 ………………………………………………………………16

Tex. Gov't Code:
      § 311.021(1) …………………………………………………..……… 12
      § 809 …………………………………...………………………...……………… 6, 7, 21
      § 809.001 ……………………………………………… 2, 10, 12, 13, 14
      § 809.004(a) ………………………………………………………… 20
      § 809.051 ……………………………………………………….......... 8, 19
      § 809.053 …………………………………………………… 2, 4, 8
      § 809.054 ……………………………………………………………… 2
      §809.056 …………………………………………………………………… 6
      § 809.057 …………………………………………………………...…… 4
      § 809.102 …………………………………………………… 4, 7, 8
      § 2276 ……………………………...………………………………… 7, 21
      § 2276.001 ……………………………………………………… 2, 9, 11
      § 2276.002 …………………………………..…………………… 5, 9, 16, 17

Texas Senate Bill 13 ……………………………………...……1, 2, 3, 4, 8, 11, 15, 16, 17, 18, 19, 20

Ala. Code § 41-16-160 …………………………………………………………… 2

Ark. Code § 25-1-1001 ……………………………………………………………... 2

Fla. Stat. § 280.02 …………………………………………………………...……… 2

Ida. Code § 67-2345 ………………………………………………………...……… 2

Kan. K.S.A. 2022 Supp. § 74-4921 ………………………………………….…..… 2

Ky. Rev. Stat. § 41.010 ……………………………………………………………… 2

N. Dak. Cen. Code § 54-44 …………………………………………………………………… 2

Ok. Stat. § 12001 ………………………………………………………………………….... 2

Tenn. Code Ann. § 9-4-107 ……………………………………………….…………………… 2

Utah Code § 63G-27-102 ………………………………………………………………... 2

W. Va. Code § 12-1C …………………………………………………………..…………… 2

**Other Authorities**

2A Norman Singer & J.D. Shambie Singer, *Sutherland on Statutes and Statutory Construction* § 47:17 (7th ed. 2014) …………………………………………………… 13

Comprehensive Iran Sanctions, Accountability, and Divestment Act of 2010, Pub. L. 111-195, 124 Stat. 1312, July 1, 2010) ……………………………………..……… 16

Comptroller of Public Accounts, List of Financial Companies that Boycott Energy Companies, Frequently Asked Questions, https://web.archive.org/web/20221109184338/https://comptroller.texas.gov/purchasing/docs/divest-energy.pdf ......................................................................................................................... 19

Exec. Order No. 14,071, Prohibiting New Investment in and Certain Services to the Russian Federation in Response to Continued Russian Federation Aggression, 87 Fed. Reg. 20999 (April 6, 2022) ...………………………………………… 16

Export Administration Act of 1979, Pub. L. 96-72 § 8, 93 Stat. 503, 521 (1979) ……………… 10

H.J. of Tex., 87th Leg. R.S. 1989, 1996 (2021) ……………………………….…………..…… 2

National Defense Authorization Act for Fiscal Year 2019, Pub. L. 115-232 §§ 1771-74, 132 Stat. 1636, 2234-38 (2108) ……………….………………... 10

S.J. of Tex., 87th Leg. R.S. 795, 801 (2021) ………………………………………..…….. 2

"Texas Oil and Natural Gas Industry Pays History-Making $26.3 Billion in State and Local Taxes, State Royalties," Texas Oil & Gas Association (Jan. 30, 2024) http://www.txoga.org/2023eeir/……………………………………1, 17

## INTRODUCTION

The State of Texas leads the nation in exports, a significant percentage of which is petroleum-based products and is ranked second in imports. Based on calendar year 2022 data, Texas' oil and natural gas industry directly contributed $360.7 billion to Texas' economy and supported a total of $751.3 billion in economic activities, employs hundreds of thousands of people, and pays billions in wages and taxes. *Texas Oil and Natural Gas Industry Pays History-Making $26.3 Billion in State and Local Taxes, State Royalties*, TEXAS OIL & GAS ASSOCIATION (Jan. 30, 2024), http://www.txoga.org/2023eeir/ (TXOGA Report). This industry is essential to the State of Texas and its residents' prosperity.

Texas accomplished this goal by enacting Texas Senate Bill 13 (SB 13), which (1) prohibits state public entities from investing and contracting with companies that boycott oil and natural gas companies and (2) requires prospective government contractors to verify they will abstain from boycotting oil and gas companies for the duration of the contract. SB 13 is specifically tailored in several ways. First, SB 13 does not apply to business owners' activities, thus ensuring these individuals can speak out against the oil and gas industry in their personal capacities. Second, SB 13 merely requires contracting entities to forego commercial decisions that, standing alone, have never been afforded such First Amendment protections. Third, the State prohibits only state public entities from investing in companies engaging in the same non-protected commercial decisions. Finally, Texas exempts minor contracts (those under $100,000) and contractors (those with fewer than ten employees) from these requirements. This carefully crafted practice ensures that Texas' tax dollars are not conscripted into the service of boycotting the economic lifeblood of the State while respecting private parties' rights to hold and espouse opinions as they may deem appropriate.

Plaintiff, American Sustainable Business Council, a membership-based organization of companies interested in opposing the oil and gas industry, has challenged the constitutionality of SB 13 on the basis that it impermissibly infringes on the freedom of speech and association of its members without any legitimate state interest.

## BACKGROUND

The Texas Legislature enacted SB 13 to prevent government contracts and investments from becoming funding sources through which parties undermine the State's economy by boycotting the oil and natural gas industry (codified as Tex. Gov't Code §§ 2276.001, *et seq.,* and 809.001, *et seq.*). The law was passed with overwhelming *bipartisan* support in the House and Senate. *See* H.J. of Tex., 87th Leg. R.S. 1989, 1996 (2021) (discussing Tex. S.B. 13); S.J. of Tex., 87th Leg. R.S. 795, 801 (2021) (same).

Once a determination is made that a financial company is "boycott[ing] energy compan[ies]" as defined by Tex. Gov't Code § 809.001(1), then the respective state governmental entity, after providing notice to the financial company and within 90 days of providing the notice, shall "sell, redeem, divest, or withdraw all publicly traded securities of the financial company" unless that divestment would "likely result in a loss in value or benchmark deviation." Tex. Gov't Code §§ 809.053, 809.054.

SB 13 does not apply to individuals. Thus, owners, managers, and employees of firms contracting with the State or its subdivisions remain free to engage in economic boycotts in their personal capacities. At least eleven other states contain similar prohibitions akin to SB 13,[1] with several additional states currently considering the same.

---

[1] Ala. Code § 41-16-160; Ark. Code § 25-1-1001; Fla. Stat. § 280.02; Ida. Code § 67-2345; Kan. K.S.A. 2022 Supp. § 74-4921; Ky. Rev. Stat. § 41.010; N. Dak. Cen. Code § 54-44; Ok. Stat. § 12001; Tenn. Code Ann. § 9-4-107; Utah Code § 63G-27-102; W. Va. Code § 12-1C

## SUMMARY OF ARGUMENT

Plaintiff's claims are nonjusticiable. Plaintiff relies on the *Ex parte Young* exception to sovereign immunity. However, this exception applies only when state officials have a "sufficient connection [to] the enforcement of the challenged act," and Plaintiff has not shown a sufficient connection to the enforcement of SB 13. *Haverkamp v. Linthicum,* 6 F.4th 662, 670 (5th Cir. 2021) (per curiam). Plaintiff also lacks standing as it did not identify members who would have standing to challenge SB 13 in their own right. Further, Plaintiff failed to plead plausible claims as boycotting the oil and natural gas industry is not protected by the First Amendment. This critical defect requires the dismissal of *all* of Plaintiff's claims.

## ARGUMENT

### I.  Plaintiff Lacks Standing

Plaintiff erroneously contends it has associational standing to bring this lawsuit.  Plaintiff, however, lacks standing to sue in this capacity as it did not identify members who would have standing to challenge SB 13 in their own right. *See Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977). Plaintiff's claim to associational standing hinges on two of its members: Etho Capital LLC ("Etho") and Our Sphere, Inc. ("Sphere"). *See* Dkt. 28, ¶¶ 18, 26, 104–112. Yet, Plaintiff did not show that either Etho or Sphere have Article III standing to challenge SB 13.

To establish Article III standing, a plaintiff must show an injury, fairly traceable, to the defendant's challenged actions, and likely redressable by the requested relief. *Lujan v. Defs. of Wildlife,* 504 U.S 555, 560-61 (1992). The plaintiff bears the burden of establishing standing and must do so for every claim and every form of relief. *TransUnion LLC v. Ramirez,* 594 U.S. 413,

431 (2021). Here, Plaintiff has not shown that Etho or Sphere would have standing in their own right for several reasons.

If the Comptroller determines that a financial company boycotts oil and natural gas companies, the Divestment Provisions require certain state governmental entities to (1) divest from that financial company and (2) not acquire securities of that financial company. Tex. Gov't Code §§ 809.053, 809.057. Plaintiff did not plead that a state entity would imminently have to divest from Etho or Sphere due to SB 13. Nor did Plaintiff plead that a state entity would imminently acquire securities in Etho or Sphere but for SB 13. As such, Plaintiff has only a "speculative" and not "actual or imminent" injury. *See Shrimpers & Fishermen of RGV v. Tex. Comm. on Env't Quality,* 968 F.3d 419, 424 (5th Cir. 2020). "Although imminence is concededly a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes—that the injury is *certainly* impending." *Clapper v. Amnesty Int'l USA,* 568 U.S. 398, 409 (2013) (emphasis in original).

But even if Plaintiff had an injury, it cannot show that injury is fairly traceable to the Comptroller or the Attorney General or that an order preventing them from "enforcing" the Divestment provisions would offer them any relief. Even if the Comptroller has placed Etho and Sphere on his list, the government entities themselves are solely responsible for purchasing or selling stocks. The Comptroller cannot force the governmental entities to do so. And even though the Attorney General has the *discretionary* authority to enforce the statute under Tex. Gov't Code § 809.102, this Court has explained that for traceability, injury, and sovereign immunity purposes, it must be likely that he will do so. *See City of Austin v. Paxton,* 943 F.3d 993, 1002 (5th Cir. 2019); *see also Air Evac EMS, Inc. v. Texas,* 851 F.3d 507, 520 (5th Cir. 2017) ("courts recognize the significant overlap between Article III jurisdiction, *Ex parte Young,* and equitable relief"). Because

Plaintiff has not alleged that the Attorney General intends to sue another state agency—his own client—to force them to sell stock that Plaintiff has not even alleged they own, they cannot show standing. It is the Plaintiff's burden to show that the Attorney General intends to do so. *Clapper,* 568 U.S. at 441, n.4. "Traceability is particularly difficult to show where the proffered chain of causation turns on the government's speculative future decisions regarding whether and to what extent it will bring enforcement actions in hypothetical cases." *A&R Engineering v. Scott*, 72 F.4th 685, 690 (5th Cir. 2023).

The Procurement Provisions state that certain governmental entities generally "may not enter into a contract with a company for goods or services unless the contract contains a written verification from the company that it: (1) does not boycott energy companies, and (2) will not boycott energy companies during the term of the contract." Tex. Gov't Code § 2276.002(b). Plaintiff did not allege that Etho or Sphere ever have, or ever will, enter into a governmental contract for goods or services that would fall under § 2276.002's ambit. As such, the Procurement Provisions do not injure Etho or Sphere in any meaningful way. "'Allegations of *possible* future injury' are not sufficient" to establish Article III standing. *Clapper,* 568 U.S. at 409 (emphasis in original). Even if they had, the Fifth Circuit has already held that a plaintiff lacks standing to sue the Attorney General based on a materially identical statute. *See A&R Engineering,* 72 F.4th at 690. Second, the "Attorney General hasn't taken any action to suggest he might enforce the provision against Plaintiff even if he has such power. The Supreme Court has instructed us to reject the mere potential for enforcement as a 'highly attenuated' speculative chain of possibilities that cannot trace an injury to the government." *Id.* at 690. That the Legislature gave the Attorney General express enforcement power as to the Divestment provisions, but was silent as to the Procurement provisions, poses a traceability problem for Plaintiff. Similarly, the Legislature did

not even mention the Comptroller in the Procurement provisions, nor did it grant him any power to enforce even so much as the Divestment provisions, which creates an even greater problem for the Plaintiff.

Moreover, the Divestment provision is not absolute as the Texas Legislature notably built safeguards into § 809 providing several relevant exceptions. *See Abdullah v. Paxton,* 65 F.4th 204, 209 (5th Cir. 2023). State governmental entities may cease divesting in listed financial companies if: (1) the entity has suffered or will suffer a loss in the hypothetical value of all assets under management; (2) an individual portfolio that uses a bench-mark aware strategy would be subject to an aggregate expected deviation from its benchmark; and, (3) it is necessary to ensure the entity does not suffer a loss in value or deviate from its benchmark. Tex. Gov't Code § 809.056.

## II.  Sovereign Immunity Bars Plaintiff's Claims

"[F]or over a century, [the Supreme Court] has made clear that the Constitution does not provide for federal jurisdiction over suits against nonconsenting States." *Kimel v. Florida Bd. of Regents,* 528 U.S. 62, 73 (2000). For the *Ex parte Young* exception to apply, state officials must have some connection to the state law's enforcement to ensure that the suit is not effectively against the state itself. *Tex. Dem. Party v. Abbott,* 961 F.3d 389, 400-01 (5th Cir. 2020). This requires the relevant state official to have both (1) the particular duty to enforce the statute in question and (2) a demonstrated willingness to do so. *Id.* The requisite connection is absent if the official sued is not statutorily tasked with enforcing the challenged law. *Id.* In *Mi Familia Vota*, the Fifth Circuit analyzed the secretary of state's connection to the enforcement of allegedly unconstitutional voting provisions and concluded that "[d]irecting the Secretary not to enforce the electronic-voting-devices-only provision in section 43.007 would not afford the Plaintiffs the relief that they seek, and therefore, the Secretary of State 'is not a proper defendant.'" *Mi Familia Vota v. Abbott,* 977

F.3d 461, 468 (5th Cir. 2020); *see also, Langan v. Abbott*, No. 1:20-CV-275-RP, 2021 WL 466124, at *4 (W.D. Tex. Feb. 8, 2021) (holding that Plaintiffs' claims against Attorney General Paxton were barred by sovereign immunity because they did not demonstrate a sufficient connection to the enforcement of the challenged statute).

As to the second requirement regarding willingness to enforce, the Fifth Circuit has explained:

> One panel observed that '[e]nforcement typically involved compulsion or restraint.' *K.P. v. LeBlanc,* 627 F.3d 115, 124 (5th Cir. 2010). Another defined it as 'a demonstrated willingness to exercise' one's enforcement duty. *Morris v. Livingston,* 739 F.3d 740, 746 (5th Cir. 2014). But the *bare minimum* appears to be 'some scintilla' of *affirmative* action by the state official. *Paxton,* 943 F.3d at 1002 (5th Cir. 2019).

*Tex. Dem. Party,* 961 F.3d at 401 (emphasis added).

### A. Sovereign Immunity Bars Plaintiff's Claims Against the Comptroller

Neither Chapter 809 nor Chapter 2276 list the Comptroller as the enforcement officer for the Act. Tex. Gov't Code § 809.102 states, "[t]he attorney general may bring an action necessary to enforce this chapter." Thus, the Comptroller is protected by sovereign immunity under the principle that "[w]here a state actor or agency is statutorily tasked with enforcing the challenged law and a different official is the named defendant, our *Young* analysis ends." *City of Austin*, 943 F.3d at 998. Further, Magistrate Judge Howell recently considered a nearly identical set of statutes—Chapter 808 of the Texas Government Code regarding boycotts of Israel—and found that the Comptroller was not a proper enforcement officer. *Abdullah v. Paxton*, No. 1:20-CV-1245-RP, 2021 WL 5181614, at *2 (W.D. Tex. Nov. 8, 2021), *report and recommendation adopted in part*, No. 1:20-CV-1245-RP, 2022 WL 1272024 (W.D. Tex. Mar. 25, 2022). Judge Howell's analysis applies equally here.

The Procurement provision does not even mention the Comptroller, which should end any *Ex parte Young* analysis of Plaintiff's claims regarding the Comptroller. *City of Austin*, 943 F.3d at 998. Under the Divestment provision, the Comptroller simply maintains a list of companies that boycott energy companies. Tex. Gov't Code § 809.051. After the list is compiled and distributed, the Comptroller's role is complete: state governmental entities themselves, not the Comptroller, "shall sell, redeem, divest, or withdraw all publicly traded securities of the financial company" if the listed financial company continues to boycott fossil fuel companies. *Id.* § 809.053(d). Nor does he have the power to force the state governmental entities to divest listed securities. *Id.* § 809.102. Accordingly, the Court's "*Young* analysis ends." *Tex. Dem. Party,* 961 F.3d at 401.

**B.  Sovereign Immunity Bars Plaintiff's Claims Against the Attorney General**

Plaintiff has not sufficiently pleaded that the Attorney General is either statutorily tasked with or has a "demonstrated willingness" to enforce either the procurement or divestment provisions of SB 13 other than "issu[ing] an advisory." Dkt. 28, ¶ 99. The Procurement provision does not list any specific enforcement officers even though the same bill gives the Attorney General discretionary authority as to the Divestment provisions. Tex. Gov't Code § 809.102. This is insufficient under *Ex parte Young*: "The required 'connection' is not merely the general duty to see that the laws of the state are implemented, but the particular duty to enforce the statute in question and a demonstrated willingness to exercise that duty." *Morris,* 739 F.3d at 746 (quotations omitted).

"Discretionary authority to act, on its own, is insufficient to give rise to a particular duty." *Mi Familia Vota v. Ogg*, 105 F.4th 313, 327 (5th Cir. 2024). Plaintiff relies on the fact that Tex. Gov't Code § 809.102 gives the Attorney General enforcement authority. But, this provision makes enforcement discretionary not mandatory. Accordingly, Plaintiff must plead a "demonstrated

willingness" to enforce the challenged statute. *Tex. Dem. Party,* 961 F.3d at 401. This means "the state officials must have *taken some step* to enforce the statute." *Mi Familia Vota*, 105 F.4th at 329 (emphasis added) (quotations omitted).

## III.  Plaintiff's Claims Fail on the Merits

### A.    The First Amendment Does Not Apply to the Procurement Provision

The Procurement provision begins by prohibiting "refusing to deal" or "terminating business activities." Tex. Gov't Code § 2276.001. Neither refusing to deal with a counterparty nor terminating business activities are expressive conduct protected by the First Amendment. The First Amendment's Speech Clause protects both speech and "conduct that is inherently expressive." *Rumsfeld v. Forum for Academic and Institutional Rights, Inc.,* 547 U.S. 47, 66 (2006) (*FAIR*); *see also, Ark. Times LP v. Waldrip as Tr. of Univ. of Ark Bd. of Trs.,* 37 F.4th 1386 (8th Cir. 2022). If explanatory speech is needed to explain the "message" of conduct, the conduct is not *inherently* expressive.  *Id.* at 65-66 (emphasis added).  Nor does conduct gain First Amendment protection just because it is accompanied by speech. "If combining speech and conduct were enough to create expressive conduct, a regulated party could always transform conduct into 'speech' simply by talking about it." *Id.* at 66. Plaintiff must prove that its conduct is inherently expressive to gain First Amendment protection. *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.,* 473 U.S. 788, 797 (1985).

Just as the anti-boycott statute prevents economic discrimination against oil and natural gas companies, Tex. Gov't Code § 2276.002, the statute at issue in *FAIR*, the Solomon Amendment, prevented discrimination against military recruiters by universities receiving federal funds, 547 U.S. at 55. A number of law schools objected to the Amendment, seeking instead to

"restrict[] the access of military recruiters to their students because of disagreement" with a former military policy barring openly gay persons from military service. *Id.* at 51-52 & n.1.

While rejecting the schools' argument, the Supreme Court explained the law "affect[ed] what law schools must *do*—afford equal access to military recruiters—not what they may or may not *say*." *Id.* at 60 (emphasis in original). "Law schools remain free under the statute to express whatever views they may have" on the military's policies without losing federal funding. *Id.* The Court also held that this refusal to deal with military recruiters was not protected expressive conduct because "First Amendment protection [extends] only to conduct that is inherently expressive" like "flag burning." *Id.* at 66. Excluding military recruiters "is not 'overwhelmingly apparent'" because "[a]n observer who sees military recruiters interviewing away from the law school has no way of knowing whether the law school is expressing its disapproval of the military." *Id.* (quoting *Texas v. Johnson*, 491 U.S. 397, 406 (1989)).

An entity's "refusing to deal" or "terminating business activities" is no more expressive than refusing military recruiters. Tex. Gov't Code § 809.001(1). It is highly unlikely that, absent any explanatory speech, an external observer would ever notice that a contractor is engaging in a primary or secondary boycott of energy companies. *Ark. Times LP*, 37 F.4th at 1392 (citing *FAIR*, 547 U.S. at 66). "An observer . . . has no way of knowing whether" the firm "is expressing its disapproval" of those companies or purchased competitors' products "for reasons of their own." *FAIR*, 547 U.S. at 66. "If combining speech and conduct were enough to create expressive conduct,"—such as announcing disapproval of the IRS and then refusing to pay income taxes—"a regulated party could always transform conduct into 'speech' by simply talking about it." *Id.* Under *FAIR,* the anti-boycott statute's proscriptions against "refusing to deal" and "terminating business

activities" do not ban speech. Tex. Gov't Code § 809.001(1). Nor do they bar "conduct that is inherently expressive." *FAIR,* 547 U.S. at 66.

Finally, federal law has long barred participation in certain economic boycotts.[2] The 8th Circuit, sitting en banc, is the only federal appellate court to consider whether a "refusal to deal" or "terminating business activities," and they held "[a] factual disclosure of this kind, aimed at verifying compliance with unexpressive conduct-based regulations, is not the kind of compelled speech prohibited by the First Amendment." *Ark. Times LP,* 37 F.4th at 1394. The First Amendment simply does not give Plaintiff a wholly unfettered right to participate in the State's contracting process while participating in economic discrimination that undermines its economy.

**B.  SB 13 is Neither Overbroad Nor Vague**

Where a plaintiff asserts both vagueness and overbreadth, the "first task is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct." *Fairchild v. Liberty Indep. Sch. Dist.*, 597 F.3d 747, 755 (5th Cir. 2010) (quoting *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494 (1982)). "If it does not, then the overbreadth challenge must fail." *Id.* (quoting *Hoffman Estates*, 455 U.S. at 494). "If the ordinance passes the overbreadth test, the court moves to 'examine the facial vagueness challenge and, assuming the enactment implicates no constitutionally protected conduct, should uphold the challenge only if the enactment is impermissibly vague in *all* of its applications.'" *Id.* at 755-56 (quoting *Hoffman Estates*, 455 U.S. at 494-95) (emphasis added).

Overbreadth challenges "can succeed only [if] overbreadth is substantial in relation to the statute's legitimate reach." *Hersh v. United States ex rel. Mukasey,* 553 F.3d 743, 762 (5th Cir.

---

[2] *See* John S. McCain, National Defense Authorization Act for Fiscal Year 2019, Pub. L. 115-232 §§ 1771-74, 132 Stat. 1636, 2234-38 (2108); Export Administration Act of 1979, Pub. L. 96-72 § 8, 93 Stat. 503, 521 (1979).

2008). Put differently, "[t]here must be a significant imbalance between the protected speech the statute should not punish and the unprotected speech it legitimately reaches." *Id.* "The fact that a court can hypothesize situations in which the statute will impact protected speech is not alone sufficient." *Id.* "The party challenging the statute must demonstrate a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the court before a statute will be struck down as facially overbroad." *Id.* "Facial challenges to the constitutionality of statutes should be granted 'sparingly.'" *Id.* (quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 613 (1973)). "They . . . 'threaten to short circuit the democratic process by preventing laws embodying the will of the people from being implemented in a manner consistent with the Constitution.'" *Id.* at 763 (quoting *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 451 (2008)). The anti-boycott statute does not encompass *any* protected expression and clearly does not include a "substantial amount" of overbreadth. *Fairchild*, 597 F.3d at 755. The statute only prohibits economic discrimination against an essential state industry. Tex. Gov't Code § 809.001(1). The Legislature's precision in specifying "refusing to deal" and "terminating business relations" belies the Plaintiff's expansive interpretation.

The doctrine of constitutional avoidance also supports this interpretation. "[W]here an otherwise acceptable construction of a statute would raise serious constitutional problems, the Court will construe the statute to avoid such problems unless such construction is plainly contrary to the intent of [the Legislature]." *Hersh*, 553 F.3d at 753-54 (quoting *Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Constr. Trades Council*, 485 U.S. 568, 575 (1988))[3]. Relately, the

---

[3] The Supreme Court has rejected the notion that the avoidance canon "has less force in the context of an overbreadth challenge," finding "no support for th[is] proposition." *United States v. Hansen*, 599 U.S. 762, 781 n.3 (2023).

Texas Legislature has provided that when interpreting Texas law, it is "presumed that [] compliance with the constitution [] of ... the United States is intended." Tex. Gov't Code §311.021(1). Accordingly, the Texas Supreme Court has "narrowly construed" statutes "to avoid vagueness and overbreadth concerns." *King St. Patriots v. Tex. Dem. Party*, 521 S.W.3d 729, 736 (Tex. 2017) (citing *Osterberg v. Peca*, 12 S.W.3d 31, 51 (Tex. 2000)). Thus, any overbreadth in the statute should be resolved in favor of the law's constitutionality.

The statute's residual clause, prohibiting "otherwise taking any action," only prohibits economic discrimination. Tex. Gov't Code § 809.001. With the required intent, it covers conduct such as charging higher fees, setting unattainable standards exceeding currently applicable law, restricting investment, or having policies restricting investment. Though not a flat "refus[al] to deal" or "terminat[ion] [of] business activities," such conduct nonetheless constitutes economic discrimination.  It "is clear" that "[t]he provision is a catch-all for commercial activities that do not fit the main two categories but have the same purpose—to reduce the company's business interactions with oil and natural gas companies in a discriminatory way. *Arkansas Times LP v. Waldrip,* 988 F.3d 453, 467 (8th Cir. 2021) (Kobes, J., dissenting).

The residual clause covers neither speech nor expressive conduct.  The statute's general reference to "otherwise taking any action" is interpreted as *ejusdem generis,* or "of the same kind," as "refusing to deal" and "terminating business activities."  *United States v. Kaluza,* 780 F.3d 647, 657 n.29 (5th Cir. 2015) (quoting 2A Norman Singer & J.D. Shambie Singer, *Sutherland on Statutes and Statutory Construction* § 47:17 (7th ed. 2014)). As a rule, the clause's invocation of "or otherwise" triggers the canon's application. *Ala. Educ. Ass'n v. State Sup. of Educ.,* 746 F.3d 1135, 1148 (11th Cir. 2014). *Ejusdem generis* "limits the scope of . . . catchall language to the same

class or category as the specific items that precede its use. *In re Millwork,* 631 S.W.3d 706, 712 (Tex. 2021) (per curiam).[4]

The statute also is not vague, and Plaintiff lacks standing to press such a challenge. "[P]laintiffs can seek judicial review of state laws and regulations *only* insofar as they show a plaintiff was (or imminently will be) *actually* injured by a particular legal provision." *In re Gee*, 941 F.3d 153, 160 (5th Cir. 2019) (per curiam) (emphasis in original). Plaintiff cannot bootstrap vagueness standing with its standing to challenge other aspects of the law.

For Plaintiff to have standing to make a vagueness challenge, its "injury must be traceable to the allegedly vague provision." *Freedom Path, Inc. v. I.R.S.*, 913 F.3d 503, 507 (5th Cir. 2019); *cf. United States v. Clark*, 582 F.3d 607, 613 (5th Cir. 2009) ("[A] [party] who engages in some conduct that is *clearly* proscribed cannot complain of the vagueness of the law as applied to the conduct of others."). Listed financial companies have committed to meeting environmental standards beyond current applicable law, restricting investment in fossil fuel companies and/or having a policy that restricts such investment. Such conduct falls squarely within the "refusing to deal with" provisions of the statute. Tex. Gov't Code § 809.001(1).

Per the canons of construction referenced herein, *ejusdem generis, noscitur a sociis*, and the avoidance canon, "any action" clearly means taking action to restrict investment in energy companies that is not protected First Amendment activity. The Fifth Circuit has "rejected that a law 'must delineate the exact actions a [person] would have to take to avoid liability.'" *Doe I v.*

---

[4] The related canon of *noscitur a sociis* illuminates the meaning of "intended to penalize, inflict economic harm on, or limit commercial relations." Tex. Gov't Code § 809.001(1). Under that canon, "a word is known by the company it keeps." *Gustafson v. Alloyd Co., Inc.,* 513 U.S. 561, 575 (1995). Statutes are read to "avoid ascribing to one word a meaning so broad that it is inconsistent with accompanying words, thus giving 'unintended breadth to' [the statute]." *Id.* at 575 (citation omitted). Applied to the residual clause, this canon confirms that "penalize" has an economic character like "inflict economic harm" and "limit commercial relations." Tex. Gov't Code § 809.001(1).

*Landry*, 909 F.3d 99, 118 (5th Cir. 2018) (quoting *Roark & Hardee LP v. City of Austin*, 522 F.3d 533, 552 (5th Cir. 2008)). "[P]erfect clarity and precise guidance have never been required even of regulations that restrict expressive activity." *Holder v. Humanitarian Law Project*, 561 U.S. 1, 19 (2010) (internal quotations omitted).

While Plaintiff claims it is "unable to determine which actions or expression will constitute a 'boycott' of fossil fuels," the Supreme Court does not support a facial attack on a statute when it is surely valid 'in the vast majority of its intended applications.'" *Hill v. Colorado*, 530 U.S. 703, 733 (2000) (quoting *United States v. Raines*, 362 U.S. 17, 23 (1960)). If the Plaintiff and/or its members are taking action to restrict investment in energy companies, then such conduct falls within the purview of SB 13.

Finally, should the Court find any infirmity in the residual clause, the clause should be severed from the statute. "Whether unconstitutional provisions of a state statute are severable is 'of course a matter of state law.'" *Nat'l Fed'n of the Blind of Tex., Inc. v. Abbott,* 647 F.3d 202, 210 (5th Cir. 2011) (quoting *Virginia v. Hicks,* 539 U.S. 113, 121 (2003)). Under Texas law, unless the statute provides otherwise, an invalid "provision" in a statute "[is] severable" if "the invalidity does not affect other provisions or application." Tex. Gov't Code § 311.032(c). "Thus, the proper inquiry under Texas law focuses on whether, if one provision of statute is invalid, the remaining provisions can still be given effect in the absence of an invalid provision." *Nat' Fed'n of the Blind,* 647 F.3d at 211. Even if the anti-boycott statute only prohibits "refusing to deal" and "terminating business activities," the law will continue to have a meaningful effect. Tex. Gov't Code § 809.001(1). Therefore, if it is invalid, the residual clause is severable.

### C.  SB 13 Does Not Implicate the First Amendment

The Divestment provision does not implicate the First Amendment, as the State is simply acting as a market participant in buying and selling financial securities. The First Amendment does not give any company a right to have the government buy or sell its stock. Further, the federal government currently imposes sanctions and requires divestments in several countries because the United States government disfavors them.[5] Plaintiff's claim cannot be viable without undermining international sanction laws regarding what the federal government is or is not allowed to purchase.

The Procurement provision does not compel anyone to say anything. Tex. Gov't Code § 2276.002. It provides that any contractor wishing to contract with a state governmental entity for an amount exceeding $100,000.00 must answer certain questions before bidding on the contract. *See Book People, Inc. v. Wong,* 98 F.4th 657, 660 (5th Cir. 2024) (Ho, C., dissenting from denial of rehearing en banc). Similar to the READER Act at issue in *Book People,* financial companies can decline to respond, and the consumer can decline to purchase.  "That's not compelled speech—that's consumer speech." *Id.* Not a single case holds the compelled speech doctrine applies when the government is asking questions as a potential consumer—rather than compelling speech as a regulator armed with the coercive powers of the state." *Id.* Under the Divestment provision, the State is simply a customer deciding if and/or when to buy and sell financial securities. Such decisions do not implicate First Amendment protections.

### D.  Even *if* SB 13 Regulates Speech, it is Still Constitutional

Even assuming the anti-boycott statute regulates speech or expression, it remains constitutional under the *United States v. O'Brien* test for neutral regulations promoting substantial

---

[5] *See* 50 U.S.C. § 1702; *see also, e.g.,* Exec. Order No. 14,071, Prohibiting New Investment in and Certain Services to the Russian Federation in Response to Continued Russian Federation Aggression, 87 Fed. Reg. 20999 (April 6, 2022); Comprehensive Iran Sanctions, Accountability, and Divestment Act of 2010, Pub. L. 111-195, 124 Stat. 1312, July 1, 2010).

government interests.  391 U.S. 367 (1968). The Fifth Circuit explained that the test sustains a statute's validity: [1] if it is within the constitutional power of the Government; [2] if it furthers an important or substantial governmental interest; [3] if the governmental interest is unrelated to the suppression of free expression; and [4] if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest." *Doe I,* 909 F.3d at 108 (quoting *O'Brien,* 391 U.S. at 377) (alterations in original).

The first element of the *O'Brien* test is clearly met as the Texas Legislature exercised settled constitutional authority when adopting the law. Secondly, the anti-boycott statute furthers at least two important or substantial government interests-limiting the extent to which tax dollars may support, directly or indirectly, government contractors' boycotts and strengthening Texas' interest in its economic partnership with the fossil fuel industry, which is a vital participant in Texas' economy.  *See* TXOGA Report. Third, none of these interests is related to the suppression of free expression. "[A] regulation satisfies this criterion . . . if it can be 'justified without reference to the content of the regulated speech.'" *J&B Ent. v. City of Jackson,* 152 F.3d 362, 376 (5th Cir. 1998) (quoting *Barnes v. Glen Theatre, Inc.,* 501 U.S. 560, 586 (1991) (Souter, J., concurring)). Finally, the incidental regulation of alleged First Amendment freedoms is no greater than essential to further the interest. The fourth element of the *O'Brien* test is met if the "substantial government interest . . . would be achieved less effectively absent the regulation." *LLEH, Inc. v. Wichita County,* 289 F.3d 358, 367 (5th Cir. 2002) (emphasis omitted). A statute is not invalid simply because there is some imaginable alternative that might be less burdensome on speech." *Id.* As such, even *if* the anti-boycott statute did prohibit speech or expression, it is still constitutional.

### E.  SB 13 Does Not Compel Protected Speech

In addition to its boycotting allegations, Plaintiff alleges that SB 13 compels speech in violation of the First Amendment due to the requirement of contractors to verify that they do not, and will not, boycott fossil fuel energy companies. Dkt. 28, ¶¶ 128, 140. The "verification requirement" does not run afoul of Supreme Court's guidance with respect to compelled speech. *See* Tex. Gov't Code § 2276.002(2)(b).

The Supreme Court has previously identified two possible categories of compelled speech that violates the First Amendment—(1) "forcing an individual, through his speech, to affirm a 'religious, political [or] ideological cause []' that the individual did not believe in," and, (2) "forcing 'an individual, as part of his daily life . . . to be an instrument for fostering public adherence to an ideological point of view he finds unacceptable." *United States v. Arnold,* 740 F.3d 1032, 1034 (5th Cir. 2014) (quoting *Wooley v. Maynard,* 430 U.S. 705, 714-15 (1977). The second category refers to compelled speech that "requir[es] the individual to be a 'mobile billboard' for the state's message," such as forcing a driver to display the State's motto on a license plate. *Id.* at 1034, n.7. The verification requirement at issue does not equate to a violation of either category.

The Fourth Circuit recently considered a similar verification requirement in *Ali v. Hogan* which required contractors to "certif[y] and agree[]" that he had not "refused to transact or terminated business activities, or taken other actions intended to limit commercial relations, with a person or entity on the basis of Israeli national origin, or residence or incorporation in Israel and its territories." 26 F.4th 587, 591 (4th Cir. 2022). The Court noted nothing in the certification required the plaintiff to "pledge any loyalty to Israel or profess any other beliefs." *Id.* at 600. As such, the Fourth Circuit held the plaintiff lacked the compelled-speech Article III injury in fact. *Id.* at 599-600. "Certification requirements for obtaining government benefits, including employment

or contracts, that merely elicit information about an applicant generally do not run afoul of the First Amendment." *Arkansas Times LP v. Waldrip,* 362 F.Supp.3d 617, 622, *rev'd on other grounds, Ark. Times LP,* 988 F.3d at 453; *see also Grove City Coll. v. Bell,* 465 U.S. 555, 575-76 (1984), *superseded by statute on other grounds, NCAA v. Smith,* 525 U.S. 459, 466 n.4 (1999) (rejecting the argument that conditioning federal assistance on compliance with Title IX's prohibition on gender discrimination violated the First Amendment). The verification requirement of SB 13 simply seeks a company's statement on its present and future activity, which does not compel protected speech.

### F.  SB 13 Does Not Infringe on Freedom of Association

"While the freedom of association is not explicitly set out in the [First] Amendment, it has long been held to be implicit in the freedoms of speech, assembly and petition." *Baird v. State Bar of Arizona,* 401 U.S. 1, 6 (1971). As clearly shown herein, SB 13 does not aim at the suppression of speech, does not license enforcement authorities to administer the statute based on constitutionally impermissible criteria, nor does Plaintiff contend SB 13 has been applied for the purpose of hampering the organization's ability to express its views. *See Roberts v. U.S. Jaycees,* 468 U.S. 609, 623-24 (1984). In fact, the Comptroller has publicly indicated that a company's commitment to Climate Action 100 or Net Zero is not sufficient for listing under Tex. Gov't Code 809.051 when he explained, "the review of verification responses indicated the financial companies consider the level of commitment to being a signatory to these lists differently.  As such, the Comptroller's office sought additional data to help inform the final listing." *See* Comptroller of Public Accounts, List of Financial Companies that Boycott Energy Companies, Frequently Asked Questions, at 4 https://web.archive.org/web/20221109184338/

https://comptroller.texas.gov/purchasing/docs/divest-energy.pdf.

Furthermore, "[t]he right to associate for expressive purposes is not, however, absolute." *Roberts,* 468 U.S. at 263. "Infringements on that right may be justified by compelling state interests, unrelated to the suppression of ideas, that cannot be achieved through means significantly less restrictive of associational freedoms. *Id.* (internal cite omitted). SB 13 is specifically directed at companies determined to be boycotting the oil and gas industry, which is not protected conduct, and was enacted to protect compelling state interests similar to the federal government's enacted sanction laws. Similarly, the State remains free to not associate with companies that it chooses not to associate with. Plaintiff and its members also remain free to engage in any association and express their views however they may deem appropriate.

### G.  SB 13 Does Not Violate Plaintiff's Right to Access Courts

Plaintiff claims the First Amendment prevents the State from failing to provide a private cause of action for every regulatory statute it passes. Plaintiff's novel claim would most certainly impose a massive federal takeover of state law as it would require states to have private causes of action for everything without any limiting principles. This cannot be. Even assuming Plaintiff can show some alleged injury—which it cannot—"[t]he fact that a person has suffered harm from the violation of a statute does not automatically give rise to a private cause of action in favor of that person." *Cannon v. Univ. of Chicago,* 441 U.S. 677, 688 (1979).

Plaintiff further alleges the fee-shifting provision "chills persons from exercising their right to access the courts by imposing monetary penalty for bringing suit," but Plaintiff has failed to allege any actual injury related to Tex. Gov't Code § 809.004(a) for which it seeks redress and therefore lacks standing. Dkt. 28, ¶ 150. "However unsettled the basis of the constitutional right of access to courts, our cases rest on the recognition that the right is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court."

*Christopher v. Harbury,* 536 U.S. 403, 415 (2002). Without any actual injury, Plaintiff's court access claim fails.

Finally, Plaintiff argues SB 13 prevents it "from filing a lawsuit challenging any implementation or consequences of SB 13." Dkt. 28, ¶ 148. Yet, that is precisely what Plaintiff has done. Accordingly, Plaintiff lacks any standing to pursue such a claim.

## CONCLUSION

As a matter of law, Plaintiff has not indicated any standing to bring the claims asserted herein against Defendants. Assuming, *arguendo,* Plaintiffs are able to impress upon the Court that they do, in fact, have standing, then Plaintiff's claims remain barred due to sovereign immunity. Finally, accepting Plaintiff's factual pleadings as true, Plaintiff has not presented any viable legal theory in which Chapter 2276 and/or Chapter 809 of the Texas Government Code should be enjoined. For the foregoing reasons, Defendants, Glenn Hegar, in his official capacity as Texas Comptroller of Public Accounts, and Ken Paxton, in his official capacity as Attorney General of Texas, respectfully request this Court dismiss all claims against them and for such other and further relief to which they may show themselves to be justly entitled.

## <u>CERTIFICATE OF SERVICE</u>

I, William H. Farrell, hereby certify that I electronically filed the foregoing the Defendants' Motion to Dismiss and Response to Plaintiff's Complaint for Declaratory and Injunctive Relief with the Clerk of the Court for the United States District Court for the Western District of Texas, Austin Division, by using the appellate CM/ECF system on November 25, 2024 which will send notice of such filing to all registered CM/ECF users.

/s/ William H. Farrell
WILLIAM H. FARRELL
Assistant Attorney General