**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

AMERICAN SUSTAINABLE BUSINESS
COUNCIL,

        *Plaintiff*,

    v.

                                      Case No. 1:24-cv-01010

GLENN HEGAR, in his official capacity as
Texas Comptroller of Public Accounts; and
KEN PAXTON, in his official capacity as
Attorney General of Texas,

        *Defendants*.

**<u>PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
AND BRIEF IN SUPPORT OF MOTION</u>**

Ketan U. Kharod
   Texas Bar No. 24027105
Mary Whittle
   Texas Bar No. 24033336
Mark Guerrero
   Texas Bar No. 24032377
Guerrero & Whittle PLLC
2905 San Gabriel St., Suite 309
Austin, TX 78705
(512) 610-2300 phone
(512) 222-5280 fax
ketan@gwjustice.com
mary@gwjustice.com
mark@gwjustice.com

Rachel L. Fried*
   DC Bar No. 1029538
Kristen Miller*
   DC Bar No. 229627
Ananda V. Burra*
   DC Bar No. 888314469
Victoria Nugent*
   DC Bar No. 470800
Skye Perryman*
   Texas Bar No. 24060411
Democracy Forward Foundation
P.O. Box 34553
Washington, D.C. 20043
(202) 448-9090
rfried@democracyforward.org
kmiller@democracyforward.org
aburra@democracyforward.org
vnugent@democracyforward.org
sperryman@democracyforward.org

Matthew D. Brinckerhoff*
N.Y. Bar No. 2415537
Vasudha Talla*
CA Bar No. 316219
Sana Mayat*
NY Bar No. 5835400
Emery Celli Brinckerhoff Abady Ward & Maazel
600 Fifth Avenue at Rockefeller Center
10th Floor
New York, NY 10020
(212) 763-5000
mbrinckerhoff@ecbawm.com
vtalla@ecbawm.com
smayat@ecbawm.com

*Counsel for Plaintiff*

*Admitted* pro hac vice

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................ii

INTRODUCTION ...............................................................................................................1

BACKGROUND ................................................................................................................2

I.  Undisputed Facts ........................................................................................................2

    A.  SB13's Core Provisions...........................................................................................2

    B.  Defendants' Public Statements About and Implementation of SB 13 ..............................3

    C.  Plaintiff and Procedural Background ..........................................................................5

STANDARD OF REVIEW ...................................................................................................6

ARGUMENT ...................................................................................................................6

I.  ASBC Has Standing to Challenge SB 13 ..........................................................................6

II.  SB 13 Violates the First Amendment..............................................................................8

    A.  SB 13 is facially overbroad ....................................................................................8

    B.  SB 13 is content- and viewpoint-discriminatory ........................................................10

    C.  SB 13 infringes on the right of association.................................................................13

    D.  SB 13 unconstitutionally compels speech .................................................................15

III.  SB 13 Is Unconstitutionally Vague ...............................................................................16

CONCLUSION ................................................................................................................19

# TABLE OF AUTHORITIES

**CASES**

*A & R Eng'g & Testing, Inc. v. City of Hous.*, 582 F. Supp. 3d 415 (S.D. Tex. 2022) ................................................................................................... 10, 11, 13

*Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*, 570 U.S. 205 (2013) ........................... 15

*Ali v. Hogan*, 26 F.4th 587 (4th Cir. 2022) .................................................................................. 10

*Amawi v. Paxton*, 956 F.3d 816 (5th Cir. 2020) ........................................................................... 7

*Ark. Times LP v. Waldrip*, 37 F.4th 1386 (8th Cir. 2022) .......................................................... 13

*Baird v. State Bar of Ariz.*, 401 U.S. 1 (1971) ........................................................................... 15

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ............................................................................. 6

*City of Hous., Tex. v. Hill*, 482 U.S. 451 (1987) ......................................................................... 8

*Cole v. Richardson*, 405 U.S. 676 (1972) .................................................................................. 15

*Consumer Data Indus. Ass'n v. Texas*, No. 21-51038, 2023 WL 4744918 (5th Cir. July 25, 2023) ...................................................................................................................... 7

*Cramp v. Bd. of Pub. Instruction of Orange County, Fla.*, 368 U.S. 278 (1961) ..................... 16

*Esperanza Peace & Just. Ctr. v. City of San Antonio*, 316 F. Supp. 2d 433 (W.D. Tex. 2001) .................................................................................................................................... 12

*Fairchild v. Liberty Indep. Sch. Dist.*, 597 F.3d 747 (5th Cir. 2010) ........................................ 7

*Grayned v. City of Rockford*, 408 U.S. 104 (1972) ................................................................... 17

*Hill v. City of Hous.*, 789 F.2d 1103 (5th Cir. 1986) .................................................................. 8

*Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333 (1977) ......................................... 6, 7

*Jordahl v. Brnovich*, 336 F. Supp. 3d 1016 (D. Ariz. 2018) ................................................ 13, 14

*Keenan v. Russ*, No. 122686 (Okla. Sup. Ct.) ........................................................................... 13

*Keenan v. Russ*, No. CV-2023-3021 (Okla. Dist. Ct. Oct. 25, 2024) .................................... 13, 18

*Kinney v. Weaver*, 367 F.3d 337 (5th Cir. 2004) ....................................................................... 10

*Knox v. Serv. Emps. Int'l Union, Loc. 1000*, 567 U.S. 298 (2012) ............................................ 15

*Koontz v. Watson*, 283 F. Supp. 3d 1007 (D. Kan. 2018) .......................................................... 13

*La Union del Pueblo Entero v. Abbott*, No. 5:21-CV-0844-XR, 2024 WL 4337515 (W.D. Tex. Sept. 28, 2024) ....................................................................................................................... 6

*Martin v. Wrigley*, 540 F. Supp. 3d 1220 (N.D. Ga. 2021) ............................................ 13, 17, 18

*NAACP v. Ala. ex rel. Patterson*, 357 U.S. 449 (1958) ............................................................ 14

*NAACP v. Claiborne Hardware Co.*, 458 U.S. 886 (1982) .................................................... 9, 14

*R.A.V. v. City of St. Paul*, 505 U.S. 377 (1992) .................................................................. 11, 13

*Reed v. Town of Gilbert*, 576 U.S. 155 (2015) .................................................................... 10, 12

*Roark & Hardee LP v. City of Austin*, 522 F.3d 533 (5th Cir. 2008) ......................................... 16

*Roberts v. U.S. Jaycees*, 468 U.S. 609 (1984) ......................................................................... 14

*Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819 (1995) ................................... 11

*Smith v. Goguen*, 415 U.S. 566 (1974) ................................................................................... 16

*United States v. Stevens*, 559 U.S. 460 (2010) ........................................................................ 10

*Virginia v. Hicks*, 539 U.S. 113 (2003) ..................................................................................... 9

*W. Va. Bd. of Educ. v. Barnette*, 319 U.S. 624, 633 (1943) ..................................................... 12

*Woodlands Pride, Inc. v. Paxton*, 694 F. Supp. 3d 820 (S.D. Tex. 2023) .................................. 9

## CONSTITUTIONAL PROVISIONS

U.S. Const., Amend. I .............................................................................................................*passim*

U.S. Const., Amend. XIV ....................................................................................................... 1, 6

## RULES

Fed. R. Civ. P. 56 ....................................................................................................................... 6

## STATUTES

§ 809.001 ..................................................................................................................2, 9, 15, 17

§ 809.051 ...........................................................................................................................2, 3, 19

§ 809.053 .............................................................................................................................2, 3

§ 809.057 ................................................................................................................................2

§ 809.006 ..............................................................................................................................19

Tex. Gov't § 808.001 ............................................................................................................9

Tex. Gov't Code § 2276.002 ...........................................................................................3, 8

## OTHER AUTHORITIES

Meeting of the Minds Podcast, *Texas and the Battle of Blackrock, the Blacklist*, Salem
    Podcast Network (May 14, 2024),  https://tinyurl.com/3yuah567 ...........................................4

Meriam-Webster, https://www.merriam-webster.com/dictionary/penalize (last visited
    Dec. 19, 2024) ...................................................................................................................17

Texas Bill Analysis, 2021 Regular Session, Senate Bill 13 (June 7, 2021) ..............................2

Texas Oil & Gas Association, *2023 Annual Energy & Economic Impact Report* 1 (Jan.
    30, 2024), https://www.txoga.org/2023eeir/.......................................................................18

Texas Public Policy Foundation, *ESG = Everyone's Suffering Guaranteed | Texas Policy
    Summit 2023*, YouTube (Mar. 2, 2023), https://tinyurl.com/yk6kem6d .................................5

Texas Senate Research Center, *S.B. 13 Bill Analysis*, LegiScan (June 7, 2021), available
    at https://tinyurl.com/yck3f5cp..........................................................................................1

## INTRODUCTION

In 2021, the Texas Legislature enacted Senate Bill 13 (SB 13) to halt what the State views as an anti-fossil fuel "movement"[1] by punishing businesses for speaking out against fossil fuels and for associating with other like-minded businesses. Specifically, the law prohibits covered state entities from investing in or contracting with companies that "boycott" fossil fuels within the meaning of SB 13. This statutory scheme facially violates the United States Constitution in several respects.

To begin, SB 13 infringes on the First Amendment right of expression because it is facially overbroad and content- and viewpoint-discriminatory: the statute defines "boycotting" to penalize expression that the State considers adverse to fossil fuel interests, but not expression the State considers adverse to renewable energy interests or supportive of fossil fuel interests. The State has candidly acknowledged that SB 13 punishes companies that "engage in anti-oil and gas rhetoric," and has implemented it to do just that. SB 13 also infringes on the right of association by penalizing companies for associating with like-minded organizations. And it unconstitutionally compels speech by requiring companies to verify in writing that they will not "boycott" fossil fuels in order to remain eligible to do business with the State.

In addition to these infirmities, the law is vague in violation of the Due Process Clause of the Fourteenth Amendment, due in large part to its imprecise definition of "boycott," which does not provide explicit standards for determining compliance with the law. Rather, the definition bars conduct that is difficult to ascertain, evaluate, or even cabin, objectively. Indeed, SB 13 is akin to several "boycott" laws that this Court and others have already deemed unconstitutional.

---

[1] Texas Senate Research Center, *S.B. 13 Bill Analysis*, LegiScan (June 7, 2021), available at https://tinyurl.com/yck3f5cp.

American Sustainable Business Council (ASBC)—acting on behalf of its members—therefore respectfully moves this Court for partial Summary Judgment on Counts One, Two, and Three of its First Amended Complaint (Am. Compl.), ECF No. 28, ¶¶ 122–41.

## BACKGROUND

### I. Undisputed Facts

#### A. SB 13's Core Provisions

Enacted in June 2021,[2] SB 13 contains two key provisions. First, the Divestment Provision prohibits certain state investment funds (the State Funds)[3] from investing in, and requires them to divest from, financial companies that "boycott energy companies." *Id.* §§ 809.053(d), 809.057. "Boycott energy company" is defined to mean:

> without an ordinary business purpose, refusing to deal with, terminating business activities with, or otherwise taking any action that is intended to penalize, inflict economic harm on, or limit commercial relations with a company because the company:
>
> > (A) engages in the exploration, production, utilization, transportation, sale, or manufacturing of fossil fuel-based energy and does not commit or pledge to meet environmental standards beyond applicable federal and state law; or
> >
> > (B) does business with a company described by Paragraph (A).

*Id.* § 809.001(1).

To identify boycotters, SB 13 requires the Comptroller to make a list (the blacklist) of all financial companies that "boycott energy companies." *Id.* § 809.051(a). In so doing, the Comptroller may "rely . . . on publicly available information" (including from "nonprofit[s]" and "research firms") and may "request written verification" from financial companies that they do not

---

[2] Texas Bill Analysis, 2021 Regular Session, Senate Bill 13 (June 7, 2021).
[3] Referred to as "state governmental entit[ies]" by SB 13, these funds are: (A) the Employees Retirement System of Texas; (B) the Teacher Retirement System of Texas; (C) the Texas Municipal Retirement System; (D) the Texas County and District Retirement System; (E) the Texas Emergency Services Retirement System; and (F) the permanent school fund. *Id.* § 809.001(7).

boycott energy companies. *Id.* If a company provides a "written response" to the request, the Comptroller "may"—but is not required to—"rely, as appropriate" on the response in deciding whether the company is boycotting. *Id.* § 809.051(a). A financial company that fails to provide such verification within 60 days "is presumed to be boycotting energy companies." *Id.* § 809.051(b). Once the blacklist is compiled, the Comptroller must provide it to the State Funds subject to the Divestment Provision. *Id.* § 809.051(a). Those funds generally must then divest from any listed companies that do not "cease boycotting" after a 90-day warning. *Id.* § 809.053(b).

*Second*, the Procurement Provision prohibits governmental entities—defined as all state agencies and political subdivisions of the state, *id.* § 2276.001—from "contract[ing] with a company for goods or services unless the contract contains a written verification from the company" that it does not "boycott energy companies" and will not do so "during the term of the contract," *id.* § 2276.002(b). This provision uses the same definition of "boycott energy companies" as the Divestment Provision. *Id.* § 2276.001.[4]

### B.  Defendants' Public Statements About and Implementation of SB 13

To implement SB 13, Comptroller Hegar sent questionnaires to numerous financial companies asking for written verification that the companies do not boycott energy companies and posing other questions about those companies' business practices. The Comptroller received responses from many of these companies. *See, e.g.*, Fried Decl. Ex. 1–8.

Consistent with SB 13's mandate, Defendant Hegar has compiled and published four iterations of the blacklist in August 2022, March 2023, November 2023, and August 2024. Fried Decl. Ex. 9–12. The Comptroller issued a press release to accompany the first three iterations. Fried Decl. Ex. 13–15. When the first blacklist was released in August 2022, the Comptroller also

---

[4] The Divestment and Procurement Provisions are subject to limited exceptions not relevant here.

issued a Frequently Asked Questions document, which he has since updated multiple times. Ex. Fried Decl. Ex. 16–20.

Referring to companies on the blacklist, the August 2022 FAQ sheet states that a governmental entity "may not enter into a contract of more than $100,000 with a company with 10 or more employees for goods and services unless the contract contains a written verification that the company does not boycott energy companies and will not do so during the term of the contract." Fried Decl. Ex. 16 at 9. The November 2022 FAQ sheet answers the question, "What steps can a financial company take to be removed from Annex I?", with: "[A]n entity that is no longer included on the Climate Action 100 and Net Zero Banking Alliance/Net Zero Asset Managers Initiative, would no longer meet the initial criteria for listing." Fried Decl. Ex. 17 at 5. The March 2023 FAQ further states that "[a] financial company may have investments in the Texas oil and gas industry and still be 'boycotting' under the law." Fried Decl. Ex. 18 at 1.

Defendant Hegar has published a Procurement and Contract Management Guide that provides state entities with guidance about how to implement SB 13's Procurement Provision. Fried Decl. Ex. 21. The guide provides standard text regarding the "boycott" fossil fuels verification for all state contracts. *Id.* at 14. It also requires state purchasers to "check the divestment lists [i.e., the blacklist] to determine if the potential awardee is in violation of" SB 13's procurement provision. *Id.* at 12. The Comptroller's office has also published other articles discussing his implementation of SB 13. *See, e.g.*, Fried Decl. Ex. 22. And Defendant Hegar has made numerous public statements about SB13 in various forums, including a podcast,[5] at a policy

---

[5] Meeting of the Minds Podcast, *Texas and the Battle of Blackrock, the Blacklist*, Salem Podcast Network (May 14, 2024), https://tinyurl.com/3yuah567.

summit,[6] and to the press.[7] For example, when announcing the first iteration of the blacklist in August 2022, Defendant Hegar stated that the list "shine[s] a light on entities" that, among other things, "engage in anti-oil and gas rhetoric publicly." Fried Decl. Ex. 13 at 1. In May 2023, Defendant Hegar's office cited BlackRock's "'net-zero' public pledges" and "adversarial rhetoric regarding the fossil fuels sector" as reasons for blacklisting the company, explaining that those "actions . . . satisfy the boycotting criteria." Fried Decl. Ex. 22 at 13.

Attorney General Paxton has also released public documents and statements about SB 13. In October 2023, Defendant Paxton issued an advisory about SB 13 that included guidance for governmental entities regarding how to implement the Procurement Provision. Fried Decl. Ex. 23. That advisory was accompanied by a press release. Fried Decl. Ex. 24. Defendant Paxton has also issued other press releases about his own efforts to enforce SB 13. Fried Decl. Ex. 25–26.

### C.  Plaintiff and Procedural Background

American Sustainable Business Council (ASBC) is a membership organization of companies, investors, and business organizations that represents, collectively, more than 200,000 businesses. Taylor Decl. ¶ 2. ASBC advances sustainable business practices; advocates for policies that support sustainable manufacturing, products, and services; and seeks to amplify the voice of sustainable businesses at the national and state levels. *Id.* ¶¶ 4–5. ASBC's members include Etho Capital LLC (Etho) and Our Sphere, Inc. (Sphere) whose funds were blacklisted for "boycotting energy companies." *Id.* ¶ 8. ASBC has members who supply good and services of the types that state and local governments buy; continued enforcement of SB 13 would apply to those members, too.

---

[6] Texas Public Policy Foundation, *ESG = Everyone's Suffering Guaranteed | Texas Policy Summit 2023*, YouTube (Mar. 2, 2023), https://tinyurl.com/yk6kem6d.
[7] Liz Crampton, *The State Comptroller Needling BlackRock*, Politico (Oct. 12, 2022), https://tinyurl.com/2rfc5mxm.

ASBC filed suit on August 29, 2024. Compl., ECF No. 1. Following Defendants' first motion to dismiss, ECF No. 24, ASBC filed an amended complaint on November 4, 2024, alleging that SB 13 violates the First Amendment rights to free speech and association, is unconstitutionally vague in violation of the Due Process Clause of the Fourteenth Amendment, and impermissibly restricts access to the courts in violation of the First Amendment. Am. Compl. ¶¶ 122–51, ECF No. 28. Defendants filed a motion to dismiss the amended complaint on November 25, 2024. Def.'s Mot. to Dismiss Am. Compl., ECF No. 32. That motion is fully briefed and remains pending. ASBC now moves on three of its five claims, requesting summary judgment that the Divestment and Procurement Provisions violate the First Amendment (Counts One and Three) and that the Divestment Provision is unconstitutionally vague (Count Two).

## STANDARD OF REVIEW

Summary judgment is appropriate where the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## ARGUMENT

### I.    ASBC Has Standing to Challenge SB 13.

ASBC satisfies the three-part test for associational standing to bring its First Amendment and vagueness claims against the Divestment Provision (Counts One and Two). *First*, ASBC's members—Etho Capital and Sphere—independently meet the Article III standing requirements of injury, traceability and redressability. *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977); *La Union del Pueblo Entero v. Abbott*, No. 5:21-CV-0844-XR, 2024 WL 4337515, at *19 (W.D. Tex. Sept. 28, 2024). Both Etho Capital and Sphere have standing to bring the First Amendment claims against the Divestment Provision because they have been blacklisted under SB 13's definition of "boycotting," which forces them to choose between their First Amendment

rights and the ability to compete for and receive investments from the State. Freeman Decl. ¶¶ 24, 26; Wright-Gladstein Decl. ¶¶ 19, 21. And they are injured by the vague definition of "boycott" because they do not know how to get off the blacklist. Freeman Decl. ¶ 29; Wright-Gladstein Decl. ¶ 23. These injuries are traceable to Defendants and would be redressed by an order that (1) declares SB 13 unconstitutional and (2) enjoins Defendants from blacklisting ASBC's members and otherwise interpreting or enforcing the law. *See* Opp'n to Mot. to Dismiss (Opp'n), ECF No. 37, at 4–5.

*Second*, the interests that ASBC "seeks to protect"—its members' ability to engage in activities that reduce reliance on fossil fuel—are "germane" to ASBC's mission of encouraging sustainable investing and business practices. *Hunt*, 432 U.S. at 343; Taylor Decl. ¶¶ 4–6.

*Third*, ASBC's members need not participate in this lawsuit because ASBC seeks only prospective and injunctive relief, not individualized damages. *Hunt*, 432 U.S. at 343; *Consumer Data Indus. Ass'n v. Texas*, No. 21-51038, 2023 WL 4744918, at *4 n.7 (5th Cir. July 25, 2023).

ASBC also has standing to bring a facial First Amendment challenge to SB 13's Procurement Provision (Count Three), which relies on the same constitutionally infirm definition of "boycott" and therefore violates the First Amendment for the same reasons as the Divestment Provision. In facial challenges to restrictions on expression, the Court is permitted to "relax the prudential limitations and allow yet-unharmed litigants to attack potentially overbroad statutes." *Fairchild v. Liberty Indep. Sch. Dist.*, 597 F.3d 747, 754 (5th Cir. 2010); *see also Amawi v. Pflugerville Indep. Sch. Dist.*, 373 F. Supp. 3d 717, 740–41 (W.D. Tex. 2019), *vacated and remanded sub nom. Amawi v. Paxton*, 956 F.3d 816 (5th Cir. 2020) ("In the First Amendment context, . . . plaintiffs are neither required to formally submit a contract nor have a contract rejected to have standing") (vacated on jurisdictional grounds). The overbreadth doctrine requires the court

to determine whether a statute "might be applied to others not before the court whose activities are constitutionally protected." *Hill v. City of Hous., Tex.*, 764 F.2d 1156, 1163 (5th Cir. 1985), *on reh'g*, 789 F.2d 1103 (5th Cir. 1986), *aff'd*, 482 U.S. 451 (1987). Such others include companies subject to and harmed by the Procurement Provision, as well as blacklisted companies that are subject to the Procurement Provision. *See* Tex. Gov't Code § 2276.002(a) (Procurement Provision applies to governmental contracts with companies with 10 or more full-time employees and that have a value of $100,000 or more); *see also* Fried Decl. Ex. 21 at 12. ("Prior to award, the Contract Developer (purchaser) must check the divestment lists [i.e., the blacklist] to determine if the potential awardee is in violation of this requirement.").

## II.    SB 13 Violates the First Amendment.

The Court need only examine the text of SB 13 to determine that the statute violates the First Amendment in several respects. First, the statute is facially overbroad because it permits applications that impermissibly regulate First Amendment activities: speech and association. Second, the statute penalizes speech and association based on the content and viewpoint of those expressive activities. Third, SB 13 unconstitutionally compels speech. The undisputed facts surrounding Defendants' application of the statute confirm it is working as intended: to penalize and discourage speech the State considers threatening to fossil fuel interests. Because SB 13 is not narrowly tailored to serve a compelling state interest, it is unconstitutional.

### A.    SB 13 is facially overbroad.

SB 13 violates the First Amendment because it is facially overbroad. An overbroad statute may purport to burden non-constitutionally protected activities, but "includes within its scope activities which are protected by the First Amendment." *Hill*, 764 F.2d at 1161, *on reh'g*, 789 F.2d 1103 (5th Cir. 1986), *aff'd*, 482 U.S. 451 (1987). The Court determines whether the statute "might be applied to others not before the court whose activities are constitutionally protected." *Id.* at

1163. "Showing a law punishes a substantial amount of protected free speech, judged in relation to the statute's plainly legitimate sweep, suffices to invalidate all enforcement of that law." *Woodlands Pride, Inc. v. Paxton*, 694 F. Supp. 3d 820, 847 (S.D. Tex. 2023) (citing *Virginia v. Hicks*, 539 U.S. 113, 115 (2003)).

Although the overbreadth doctrine is "strong medicine," *Hill*, 764 F.2d at 1162, that medicine is warranted here. The definition of "boycott energy companies" at the heart of SB 13 permits the State to penalize companies for all manner of protected expression concerning fossil fuels. Under the statute, "boycotting" includes "taking any action that is intended to penalize, inflict economic harm on, or limit commercial relations with" a company in the fossil fuel industry or that does business with such a company. Tex. Gov't Code § 809.001(1). As was true of the ordinance in *Hill*—which made it "unlawful for any person . . . *in any manner* to oppose . . . any policeman in the execution of his duty"—SB 13's "any action" clause "affects a broad range of protected activities." 764 F.2d at 1163 (emphasis in original). The plain meaning of the phrase "taking any action that is intended to penalize" fossil fuels includes, for example, speaking about the risks posed by fossil fuels, advocating against reliance on fossil fuels, and associating with like-minded organizations—all forms of expression in which ASBC's members, including Etho and Sphere, regularly engage. Freeman Decl. ¶¶ 16–24; Wright-Gladstein Decl. ¶¶ 8, 12–19. These "form[s] of speech or conduct" are constitutionally protected. *See NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 907 (1982).

This Court held that an identical provision in Texas's "boycott Israel" law "by its terms" applied to "expressive" activity and was "overbroad in its restriction of protected speech." *Amawi*, 373 F. Supp. 3d at 745, 752 (granting preliminary injunction); Tex. Gov't § 808.001(1) (defining "Boycott Israel"). The Southern District of Texas came to the same conclusion. *A & R Eng'g &*

*Testing, Inc. v. City of Hous.*, 582 F. Supp. 3d 415, 431 (S.D. Tex. 2022) (holding Texas's "boycott Israel" law violated corporation's First Amendment rights), *rev'd and remanded sub nom. A & R Eng'g & Testing, Inc. v. Scott*, 72 F.4th 685 (5th Cir. 2023) (reversed on jurisdictional grounds). That statute contained a clause identical to SB 13 prohibiting "any action that is intended to penalize, inflict economic harm on, or limit commercial relations" with Israel. In interpreting that clause, the court observed: "it is difficult, if not impossible, to see how 'any action' is limited to conduct outside the purview of the First Amendment." *Id*. at 431–32. *See also Ali v. Hogan*, 26 F.4th 587, 598 (4th Cir. 2022) (distinguishing the Maryland "boycott Israel" law from Texas's "boycott Israel" law, explaining that "the State of Texas prohibited boycotts of Israel as a condition of public employment," and that "[t]hat condition broadly impacted 'all actions' taken by a company contracting with the State, regardless of whether the anti-Israel boycotting activity was taken in either a personal or professional capacity." (quoting *Amawi*, 373 F. Supp. 3d at 730)).

SB 13's application to protected speech is "substantial," both in absolute terms and "in relation to the statute's plainly legitimate sweep." *United States v. Stevens*, 559 U.S. 460, 473 (2010). For this reason alone, the law is unenforceable. *See Hill*, 764 F. 2d at 1161.

### B. SB 13 is content- and viewpoint-discriminatory.

The First Amendment prohibits laws "abridging the freedom of speech." U.S. Const., Amend. 1. Thus, a government cannot "restrict expression because of its message, its ideas, its subject matter, or its content." *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015) (quotation omitted); *see also Kinney v. Weaver*, 367 F.3d 337, 357 (5th Cir. 2004) (The First Amendment prohibits "the denial of public benefits to punish individuals for their speech." (cleaned up)). "When the government targets not subject matter, but particular views . . . on a subject, the violation of the First Amendment is all the more blatant." *Rosenberger v. Rector & Visitors of*

*Univ. of Va.*, 515 U.S. 819, 829 (1995) (citation omitted). "Viewpoint discrimination is thus an egregious form of content discrimination" and "is presumed to be unconstitutional." *Id*. at 828–29.

SB 13 by its terms discriminates against speech based on content and viewpoint. SB 13 engages in content discrimination by penalizing companies for expression concerning fossil fuels but not concerning other topics. And it is viewpoint discriminatory by penalizing companies for negative, but not positive, statements concerning fossil fuels. "The First Amendment does not permit . . . special prohibitions on those speakers who express views on disfavored subjects." *R.A.V. v. City of St. Paul*, 505 U.S. 377, 391 (1992). Nor does Texas have "authority to license one side of a debate to fight freestyle, while requiring the other to follow Marquis of Queensberry rules." *Id*. at 392. This Court and the Southern District of Texas have concluded that the analogous "boycott Israel" law likely discriminates based on viewpoint. *See Amawi*, 373 F. Supp. 3d at 748; *A & R Eng'g & Testing, Inc.*, 582 F. Supp. 3d at 436–37 ("[T]he First Amendment protects all points of view on this issue, even if they do not comport with the economic goals of this State.").

The undisputed facts surrounding Defendants' application of the statute illustrate its viewpoint-discriminatory effect. The Comptroller announced in 2022 that SB 13 punishes companies that "engage in anti-oil and gas rhetoric." Fried Decl. Ex. 13 at 1. When asked that same year whether SB 13 is intended to convince companies to "change their investment portfolios," the Comptroller replied that it is not, explaining that "some companies that . . . [are] investing in oil and gas" were nonetheless blacklisted because "their publications . . . make it seem as though they are [boycotting fossil fuels]."[8] These statements confirm that it is companies'

---

[8] Liz Crampton, *The State Comptroller Needling BlackRock*, Politico (Oct. 12, 2022), https://tinyurl.com/55cdd9xr; *see also* Compl. ¶ 78 (quoting the Crampton article).

speech concerning fossil fuels—and not their investment behavior—that is the key determinant for whether the State considers them to "boycott" fossil fuels under SB 13.

For example, several companies including Credit Suisse, State Street Global Advisors, and BNY Mellon stated in their questionnaire responses that they consider climate risk relevant to overall financial risk and performance but explained they do not "boycott" fossil fuels under SB 13. Fried Decl. Ex. 3 at 2, 4; Fried Decl. Ex. 4 at 4, 6; Fried Decl. Ex. 5 at 2, 5. Yet Credit Suisse, several State Street funds, and BNY Mellon were blacklisted. *See* Fried Decl. Ex. 9–12. Likewise, BlackRock explained that it does not "boycott" fossil fuels under SB 13 because it held $115 billion in Texas energy companies and, in any case, the "ordinary business purpose" exclusion in the definition of "boycott" applied to any decision not to invest in any particular company. Fried Decl. Ex. 1 at 1, 6–8; *see also* Fried Decl. Ex. 2 at 1–2, 14–16. Yet the Comptroller blacklisted BlackRock, Fried Decl. Ex. 9–12, asserting that the company's "'net-zero' public pledges"[9] and "adversarial rhetoric regarding the fossil fuels sector" were "actions that satisfy the boycotting criteria." Fried Decl. Ex. 22 at 13. This Court has previously held that "the denial of government funding because the applicant espouses an unpopular . . . viewpoint"—as shown here—is the clearest example of viewpoint discrimination. *Esperanza Peace & Just. Ctr. v. City of San Antonio*, 316 F. Supp. 2d 433, 447 (W.D. Tex. 2001).

Content- or viewpoint-discriminatory laws are constitutional only where "the government proves that they are narrowly tailored to serve compelling state interests." *Reed*, 576 U.S. at 163. SB 13 is not. The state contends that SB 13 furthers "Texas' interest in its economic partnership with the fossil fuel industry." MTD at 25. Yet both the Comptroller's statements and SB 13's text

---

[9] Public pledges, such as the net-zero pledge here, are protected expression. *See W. Va. Bd. of Educ. v. Barnette*, 319 U.S. 624, 633, 644 (1943) (compulsory pledge, which "requires affirmation of belief and an attitude of mind," was unconstitutionally compelled speech).

indicate that SB 13 is meant to discourage a particular viewpoint concerning fossil fuels. "'In fact, the only interest distinctly served by the content [and viewpoint] limitation is that of displaying [Texas's] special hostility toward the particular biases thus singled out. That is precisely what the First Amendment forbids.'" *Amawi*, 373 F. Supp. 3d at 751 (quoting *R.A.V.*, 505 U.S. at 395–96).

Nor is SB 13 narrowly tailored. The law, for example, prohibits state entities from investing in or contracting with companies that do invest in fossil fuels—including fossil fuel companies in Texas—if company representatives have made statements the State considers "advers[e]" to the fossil fuel industry. Fried Decl. Ex. 22 at 13. "Texas's power to align commerce with its policy objectives . . . does not justify such a sweeping restriction on peaceful, lawful speech." *Amawi*, 373 F. Supp. 3d at 752 (internal quotations omitted).

This Court and all other courts that have considered whether "boycott Israel" laws analogous to SB 13 are or are likely to be unconstitutional—with the exception of the Eighth Circuit—have already concluded that such laws violate, or are likely to violate, the First Amendment.[10] Moreover, the only other court to have considered a "boycott energy companies" law—also analogous to SB 13—held that it too violates the First Amendment. Order as to Pl.'s Mot. for Summ. J., *Keenan v. Russ*, No. cv-2023-3021, at 4–7 (Okla. Dist. Ct. Oct. 25, 2024), *appeal pending*, No. 122686 (Okla. Sup. Ct.).

### C.  SB 13 infringes on the right of association.

SB 13 also unconstitutionally infringes on ASBC's members' First Amendment right to associate. The First Amendment protects the "freedom to associate and privacy in one's

---

[10] *A & R Eng'g & Testing*, 582 F. Supp. 3d at 435; *Amawi*, 373 F. Supp. 3d at 748; *Jordahl*, 336 F. Supp. 3d at 1045-50; *Koontz v. Watson*, 283 F. Supp. 3d 1007, 1021-24 (D. Kan. 2018); *Martin v. Wrigley*, 540 F. Supp. 3d 1220, 1229-31 (N.D. Ga. 2021). *But see Ark. Times LP v. Waldrip*, 37 F.4th 1386 (8th Cir. 2022). The statute at issue in *Arkansas Times* is distinguishable from SB 13. *See* Pl.'s Opp. To MTD at 11.

associations." *NAACP v. Ala. ex rel. Patterson*, 357 U.S. 449, 462 (1958). This right includes expressive association, such as the right to associate while engaging in First Amendment activities. *Roberts v. U.S. Jaycees*, 468 U.S. 609, 617–18 (1984). Infringements on the right are only justified if the law "serve[s] compelling state interests, unrelated to the suppression of ideas, that cannot be achieved through means significantly less restrictive of associational freedoms." *Id*. at 623.

Again, SB 13's infringement of the right of association is apparent from the statute's text. The phrase "refusing to deal with, terminating business activities with, or otherwise taking any action that is intended to penalize" fossil fuels encompasses associating with others who share the view that fossil fuels should be phased out over the coming decades. As was true of Arizona's analogous "boycott Israel" law, "[t]he type of collective action targeted by the Act specifically implicates the rights of assembly and association that Americans . . . use 'to bring about political, social, and economic change.'" *Jordahl v. Brnovich*, 336 F. Supp. 3d 1016, 1043 (D. Ariz. 2018), *vacated and remanded*, 789 F. App'x 589 (9th Cir. 2020) (quoting *Claiborne*, 458 U.S. at 911) (vacated on jurisdictional grounds).

There can be no genuine dispute that Defendants have applied SB 13 to penalize companies for their associations. In implementing SB 13, the Comptroller considered whether companies are members of associations that advocate for sustainable investing (and other sustainability measures) in determining whether to blacklist the companies. *See, e.g.*, Fried Decl. Ex. 1 at 2–3 (describing BlackRock's membership in certain associations in response to Comptroller's questionnaire). The Comptroller also publicly stated in 2022 that companies can be removed from the blacklist if they discontinue their membership in such associations. Fried Decl. Ex. 17 at 5. The AG likewise stated in 2023 that state entities must take notice of "whether [a] company is a member of the Net Zero

14

Alliance or a signatory of any other similar entity" in determining whether SB 13 permits the state

entity to contract with the company. Fried Decl. Ex. 23 at 5.

For the reasons discussed above, *supra* at 12–13, SB 13 is not narrowly tailored to meet a

compelling state interest. Moreover, any interest in supporting the fossil fuel industry can be

achieved through means significantly less restrictive of associational freedoms. In addition to

being overbroad and viewpoint discriminatory, SB 13 thus independently and unconstitutionally

infringes on the First Amendment right of association.

### D.   SB 13 unconstitutionally compels speech.

SB 13 unconstitutionally compels companies to agree in writing that they do not "boycott"

fossil fuels. "The government may not . . . compel the endorsement of ideas that it approves." *Knox*

*v. Serv. Emps. Int'l Union, Loc. 1000*, 567 U.S. 298, 309 (2012). This includes compelling

recipients of government benefits "to adopt a particular belief as a condition of funding." *Agency*

*for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*, 570 U.S. 205, 218 (2013). "When a State seeks to

inquire about an individual's beliefs and associations a heavy burden lies upon it to show that the

inquiry is necessary to protect a legitimate state interest." *Baird v. State Bar of Ariz.*, 401 U.S. 1,

6–7 (1971). Nor may a state condition employment "on an oath that one has not engaged, or will

not engage, in protected speech activities." *Cole v. Richardson*, 405 U.S. 676, 680 (1972).

SB 13 undisputably requires contractors to verify in writing that they do not "boycott

energy compan[ies]." Tex. Gov't Code § 809.001(1). As discussed above, SB 13 defines "boycott"

to include "taking any action that is intended to penalize" the fossil fuel industry. *Supra* at 2. SB

13 therefore conditions companies' ability to contract with the State or to compete for investments

from state pension funds on an "oath" that they "will not engage, in protected speech activities" as

a condition of funding. *See Cole*, 405 U.S. at 680. Companies that agree to say they do not

"boycott" fossil fuels therefore relinquish their rights to speak against fossil fuels and to associate with like-minded organizations. For the same reasons SB 13 is not narrowly tailored to a compelling state interest, *supra* at 12–13, Texas has not provided any legitimate interest in conditioning its business on companies giving up their speech and association rights. *See also Amawi*, 373 F. Supp. 3d at 754–55 (analogous "boycott Israel" law unconstitutionally compelled speech).

### III.  SB 13 Is Unconstitutionally Vague.

A law is unconstitutionally vague in violation of the Due Process Clause when it "either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application." *Cramp v. Bd. of Pub. Instruction of Orange County, Fla.*, 368 U.S. 278, 287 (1961).

> In evaluating vagueness, a reviewing court should consider: (1) whether the law gives the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly, and (2) whether the law provides explicit standards for those applying them to avoid arbitrary and discriminatory applications.

*Roark & Hardee LP v. City of Austin*, 522 F.3d 533, 551 (5th Cir. 2008) (cleaned up). Where, as here, the statute reaches "expression sheltered by the First Amendment, the [vagueness] doctrine demands a greater degree of specificity than in other contexts." *Smith v. Goguen*, 415 U.S. 566, 573 (1974). SB 13 is thus unconstitutionally vague because (1) the statute's definition of "boycott energy company" fails to provide a reasonable opportunity to know what conduct is prohibited and (2) the definition invites—and has in fact already led to—discriminatory and arbitrary enforcement.

SB 13's "boycotting" definition is comprised of three clauses, all of which are undefined and not susceptible to objective measurement or determination: (1) "refusing to deal with [fossil fuel energy companies]," (2) "terminating business activities with [fossil fuel energy companies],"

16

and (3) "or otherwise taking any action that is intended to penalize, inflict economic harm on, or limit commercial relations with [fossil fuel energy companies]." Tex. Gov't Code § 809.001(1). The definition of "boycott" excludes any action falling within any of these clauses if it was taken pursuant to an "ordinary business purpose." *Id.*

We begin with the third clause, which is unclear because the expansive phrase "any action" is limited only by vague terms. For example, the term "penalize" means "to inflict a penalty on" or "to put at a serious disadvantage."[11] This word—which "easily applies to political speech intending to persuade others to economically boycott or otherwise 'penalize' [fossil fuel companies]," *Amawi*, 373 F. Supp. 3d at 756—could mean anything from direct economic harm to any number of protected expressive activities, such as participating in the 2019 Global Climate Strike, Freeman Decl. ¶ 23, or publicly advocating for climate-positive laws, Wright-Gladstein Decl. ¶ 8. Because the uncertain meaning of "penalize" "abuts upon sensitive areas of basic First Amendment freedoms, it operates to inhibit the exercise of those freedoms" by leading "citizens to steer far wider of the unlawful zone than if the boundaries of the forbidden areas were clearly marked." *Grayned v. City of Rockford*, 408 U.S. 104, 109 (1972) (quotations omitted) (cleaned up).

The following two phrases are no better. As is true of "penalize," the phrase "limit commercial relations" could "reasonably be interpreted" to include "[p]ublic speech which advocates for a boycott of [energy companies] and calls on others to engage in [fossil fuel boycotts]." *Martin*, 540 F. Supp. 3d at 1232 (declining to dismiss claim that a similar phrase in an analogous Boycott Israel law was vague). "[L]imit[ing] commercial relations" is additionally

---

[11] Meriam-Webster, https://tinyurl.com/yucfkypw (last visited Jan. 22, 2025).

vague because it could mean merely ceasing ongoing business or it could also include refraining from new business, reducing the amount of business, or other decisions.

Likewise, companies cannot know how "inflict[ing] economic harm" is determined, including whether it refers to short-term or long-term harm. For instance, a company facing a public call to exceed minimum regulatory standards for CO2 emissions may decide to transition to more renewable energy sources, which could be viewed as economically harmful in the short-term, even though it would lead to a long-term economic gain. Further, that numerous companies were blacklisted under SB 13 during a year when the fossil fuel industry is claiming extraordinary profits[12] demonstrates the unworkability of "inflict[ing] economic harm"; it would be difficult if not impossible for the State to establish that any particular company's speech or actions economically harmed a company in the fossil fuel industry during a period of increased profits.

Beyond the third clause, the preceding two clauses ("refusing to deal" and "terminating business activities") are also vague. For example, it is unclear whether a company is "refusing to deal" or "terminating business activities" with fossil fuel companies when it decides to switch from fossil fuel-based electricity to renewable energy-based electricity for its office buildings. Courts have thus found that analogous "boycott" laws are, or are likely to be, unconstitutionally vague.[13]

Indeed, SB 13's vagueness has allowed the Comptroller to enforce the statute in a discriminatory manner. As noted above, the Comptroller and his office have explicitly stated on multiple occasions that he blacklists companies (or their funds) because of their public statements

---

[12] Texas Oil & Gas Association, *2023 Annual Energy & Economic Impact Report* 1 (Jan. 30, 2024), https://www.txoga.org/2023eeir/ ("2023 was … a blockbuster year.").

[13] *See, e.g.*, *Amawi*, 373 F. Supp. 3d at 755-58; *Martin*, 540 F. Supp. 3d at 1232 (the "other actions" clause in Georgia's "boycott Israel" law "makes the statute impermissibly vague."); Order as to Pl.'s Mot. for Temp. Inj., *Keenan*, No. cv-2023-3021, at 9-11 (May 7, 2024) (Oklahoma's "boycott energy company" law was likely unconstitutionally vague); Journal Entry, *Keenan*, No. cv-2023-3021, at 1–2 (granting summary judgment on vagueness claim).

and "anti-oil and gas rhetoric," even when those companies are invested in fossil fuels. *Supra* at 11–12. To give just one example, Blackrock explained to the Comptroller that its "history of investment in the energy sector"—BlackRock held $115 billion in Texas energy companies—was "completely at odds with any finding that BlackRock 'refuses to deal with, terminates business activities with, or otherwise takes any action' against companies in that sector." Ex. 1 at 11 (cleaned up). Yet BlackRock has appeared on all iterations of the blacklist, in part or possibly in whole—as the Comptroller's Office has explained—because of its "adversarial rhetoric regarding the fossil fuels sector." Fried Decl. Ex. 22 at 13.

Comparing financial companies' responses to the Comptroller's questionnaires with the blacklists demonstrates that the Comptroller's enforcement has also been arbitrary. Although SB 13 excludes from "boycotting" actions taken with "an ordinary business purpose," the Comptroller has blacklisted many companies that asserted their actions were driven by one or more ordinary business purposes. *See, e.g.*, Fried Decl. Ex. 1 at 6–8; Fried Decl. Ex. 2 at 14–16; Fried Decl. Ex. 3 at 4; Fried Decl. Ex. 7 at 3; Fried Decl. Ex. 8 at 1–2. The Comptroller provided no explanation for why he determined those statements were not reliable. *See* Tex. Gov't Code §§ 809.006, 809.051(a)(2). The Comptroller's discriminatory and arbitrary implementation of SB 13 demonstrates its vagueness.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully asks the Court to declare SB 13 unconstitutional and grant summary judgment on Counts One, Two, and Three of Plaintiff's First Amended Complaint.

Dated: January 24, 2025                        Respectfully submitted,

*/s/ Ketan U. Kharod*
Ketan U. Kharod
Texas Bar No. 24027105
Mary Whittle
Texas Bar No. 24033336
Mark Guerrero
Texas Bar No. 24032377
Guerrero & Whittle PLLC
2905 San Gabriel St., Suite 309
Austin, TX 78705
(512) 610-2300 phone
ketan@gwjustice.com
mary@gwjustice.com
mark@gwjustice.com

Rachel L. Fried*
DC Bar No. 1029538
Ananda V. Burra*
DC Bar No. 888314469
Kristen Miller*
DC Bar No. 229627
Victoria Nugent*
DC Bar No. 470800
Skye Perryman*
Texas Bar No. 24060411
Democracy Forward Foundation
P.O. Box 34553
Washington, D.C. 20043
(202) 448-9090
rfried@democracyforward.org
aburra@democracyforward.org
kmiller@democracyforward.org
vnugent@democracyforward.org
sperryman@democracyforward.org

Matthew D. Brinckerhoff*
N.Y. Bar No. 2415537
Vasudha Talla*
CA Bar No. 316219
Sana Mayat*
NY Bar No. 5835400
Emery Celli Brinckerhoff Abady Ward & Maazel
600 Fifth Avenue at Rockefeller Center

10th Floor
New York, NY 10020
(212) 763-5000
mbrinckerhoff@ecbawm.com
vtalla@ecbawm.com
smayat@ecbawm.com

*Counsel for Plaintiff*
**Admitted* pro hac vice

**CERTIFICATE OF SERVICE**

I, Ketan U. Kharod, hereby certify that I electronically filed the foregoing Plaintiff's Motion for Partial Summary Judgment and Brief in Support of Motion with the Clerk of the Court for the United States District Court for the Western District of Texas, Austin Division, by using the CM/ECF system on January 24, 2025, which will send notice of such filing to all registered CM/ECF users.

*/s/ Ketan U. Kharod*
KETAN U. KHAROD