# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| AMERICAN SUSTAINABLE BUSINESS COUNCIL, | § § § | |
| *Plaintiff*, | § § | |
| v. | § § | Case No. 1:24-cv-01010 |
| GLENN HEGAR, in his official capacity as Texas Comptroller of Public Accounts; and KEN PAXTON, in his official capacity as Attorney General of Texas, | § § § § § § | |
| *Defendants*. | § | |

### ***AMICUS CURIAE* BRIEF OF HARRIS COUNTY, TEXAS IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

## INTEREST OF *AMICUS CURIAE*[1]

Harris County, Texas is the largest county in Texas with a population of over 4.8 million people.[2] Because the county is a "governmental entity" as defined by Senate Bill 13 (SB 13), Tex. Gov't Code § 2276.001(3), it is subject to that statute's Procurement Provision, which prohibits the county from "contract[ing] with a company for goods or services unless the contract contains a written verification from the company" that it does not "boycott energy companies" and will not do so "during the term of the contract," *id.* § 2276.002(b). Harris County has a significant interest in this case: SB 13 violates the First and Fourteenth Amendment rights of companies with which the county does business, and the county's own activities are limited and regulated by SB 13, to the detriment of Harris County's residents.

Harris County has a unique perspective to offer as an *amicus* in this case. The county is home to numerous energy companies and the largest petrochemical complex in the United States, and it is also a center for a growing non-hydrocarbon-based fuels sector.[3] In addition, Harris County acknowledges the reality of climate change and the need for taking appropriate action to confront the climate crisis.[4] The steps needed to effectively respond to climate change—and to accommodate the various interests implicated by that response—are many and are the subject of

---

[1] No counsel for a party authored this brief in whole or in part, and no entity, other than *amicus*, its officers, employees, or counsel, has made a monetary contribution to the preparation or submission of this brief.

[2] *See* U.S. Census Bureau, *QuickFacts*, https://www.census.gov/quickfacts/fact/table/harriscountytexas/PST045223#PST045223 (last visited Jan. 30, 2025).

[3] *See* Harris County, *Texas Economic Development*, https://hcoed.harriscountytx.gov/industrysectors.aspx#:~:text=Harris%20County%20%E2%80%93%20home%20to%20the,%2C%20marketing%2C%20supply%20and%20technology (last visited Jan. 30, 2025).

[4] *See* Harris County Judge, *Climate Change & Protecting Our Environment*, https://cjo.harriscountytx.gov/Climate-Change-Protecting-our-Environment (last visited Jan. 30, 2025).

1

oftentimes vigorous debate. That is the way things should be in a free and democratic society, and it is what the Constitution requires. As Justice Holmes wrote, "the theory of our Constitution" is "that the best test of truth is the power of the thought to get itself accepted in the competition of the market, and that truth is the only ground upon which [the people's] wishes safely can be carried out." *Abrams v. United States*, 250 U.S. 616, 630 (1919) (Holmes, J., dissenting). SB 13 rejects that theory and seeks to replace it with the heavy hand of government censorship and compulsion. SB 13—and the actions taken by Defendants under that statute—limits the activities of counties and other governmental entities as a means of muzzling the free expression of viewpoints regarding fossil fuels and climate change. That is impermissible under the First and Fourteenth Amendments and does not serve the interests of Harris County residents or businesses, or of companies seeking to provide crucial goods and services to the county.

## ARGUMENT

**I. Defendants are not immune from Plaintiff's claims: the Attorney General and Comptroller both have a sufficient connection to the enforcement of SB 13, as illustrated by their role in the issuance of local government bonds.**

Plaintiff's motion for partial summary judgment amply demonstrates why it has standing to bring this suit. Pl.'s Mot. for Part. Summ. J. at 6–8 (ECF No. 39). Defendants have argued that sovereign immunity bars Plaintiff's claims. Defs.' Mot. to Dismiss Pl.'s First Am. Compl. at 6–9 (ECF No. 32). This Court should reject that argument. Pursuant to the *Ex parte Young* doctrine, Defendants in this case—Attorney General Paxton and Comptroller Hegar—are not immune because they each have "some connection with the enforcement of" SB 13. *Air Evac EMS, Inc. v. Tex. Dep't of Ins.*, 851 F.3d 507, 519 (quoting *Ex parte Young*, 209 U.S. 123, 157 (1908)).

As Plaintiff explains, the blacklist compiled by Comptroller Hegar for purposes of SB 13's Divestment Provision is also used in connection with the enforcement of the Procurement Provision. Pl.'s Mot. for Part. Summ. J. at 3–5 (noting, for example, that the Comptroller has

2

published a Procurement and Contract Management Guide that requires state purchasers to check the blacklist for purposes of complying with the Procurement Provision). Attorney General Paxton has released similar enforcement guidance. *Id.* at 5.

Of particular concern to Harris County is Defendants' enforcement of SB 13's Procurement Provision as it relates to the issuance of local government bonds. The standard way for bringing local government bonds to market is through the underwriting process, which entails one or more municipal securities dealers—"underwriters"—purchasing the newly issued bonds from the governmental entity and then selling the bonds to investors. Once a local government decides to finance a project by issuing bonds, it contracts with an underwriter to complete the financing plan and prepare offering documents and presentations to rating agencies and investors, to market the bond offering to investors, and to price the bonds and close the transaction.[5]

Texas law authorizes counties and municipalities to issue public securities, and the issuance of bonds is essential to Harris County's ability to function as a government entity. *E.g.*, Tex. Gov't Code § 1371.051; *id.* § 1371.053. Before they can issue bonds, Texas law requires local government entities to submit them to the Attorney General for legal review and approval. *Id.* § 1202.003. If the Attorney General approves the issuance, he then sends the bonds to the Comptroller for registration. *Id.* This review-and-approval process is crucial to the issuance of bonds: if the Attorney General refuses to approve a proposed bond issuance, the bonds lack legal protection and cannot be successfully marketed by a local government entity. *Id.* § 1202.006 (providing that public securities "are valid and incontestable in a court or other forum and are

---

[5] *See* Municipal Securities Rulemaking Board, *The Underwriting Process*, https://www.msrb.org/Underwriting-Process (last visited Jan. 30, 2025).

3

binding obligations for all purposes . . . *after* the public security is approved by the attorney general and registered by the comptroller" (emphasis added)).

The ability and willingness of Attorney General Paxton and Comptroller Hegar to enforce SB 13 in connection with the issuance of local government bonds is clear. Attorney General Paxton has broadly declared that the prohibitions contained in SB 13's Procurement Provision cover municipal bond underwriters, stating that they apply to all government contracts for "securities lending," any "professional services," and "any other services related to financial products."[6] He has specifically invoked his "authority to review and approve the issuance of municipal bonds in Texas," "directed [his] Public Finance Division to take proactive measures . . . to verify that companies that underwrite municipal bonds in this State comply with" SB 13, and explicitly referenced the Comptroller's blacklist.[7]

In an All Bond Counsel Letter dated November 1, 2023,[8] the Attorney General identified eighteen entities as potential "fossil fuel boycotters" because they had standing letters on file with his office while also purportedly being members or affiliates of the Net Zero Banking Alliance—a "group of leading global banks," convened by the United Nations, "committed to aligning their lending, investment, and capital markets activities with net-zero greenhouse gas emissions by

---

[6] Office of the Attorney General of Texas, *Advisory on Texas Law Prohibiting Contracts and Investments with Entities that Discriminate against Firearm Entities or Boycott Energy Companies or Israel*, at 4, https://www.texasattorneygeneral.gov/sites/default/files/images/executive-management/OAG%20advisory%20on%20SB%2013%20and%2019%2010.18.23.pdf (last visited Jan. 30, 2025).

[7] *Id.* at 2.

[8] Office of the Attorney General of Texas, *All Bond Counsel Letter* (dated Nov. 1, 2023), at 4, https://texasattorneygeneral.gov/sites/default/files/files/divisions/public-finance/ABCLetter-11-01-2023.pdf (last visited Jan. 30, 2025).

4

2050."[9] In that same letter, the Attorney General boasted about the results of the combined enforcement efforts undertaken by his own office and the Comptroller, writing:

> When the Comptroller of Public Accounts issued his preliminary list of companies that boycott energy companies, my Public Finance Division quickly reviewed it and agreed that UBS and its affiliates were boycotters and banned UBS from underwriting public securities in Texas.[10]

The Attorney General even acknowledged that this ban had resulted in a Texas school district being required "to reprice bonds that UBS had previously agreed to purchase but had not yet closed," causing the district significant financial harm.[11] The Attorney soon followed through with his threats yet again, announcing on January 26, 2024 that Barclays—one of the entities identified in the November 1, 2023 All Bond Counsel Letter—would "no longer be permitted to underwrite Texas's municipal bonds."[12]

The actions taken by the Attorney General and Comptroller under SB 13 to censor companies that they associate with viewpoints they dislike—including by threatening and banning those companies from underwriting municipal bonds—demonstrate far more than the "scintilla of enforcement" that *Ex parte Young* requires. *Jackson v. Wright*, 82 F.4th 362, 367 (5th Cir. 2023). Requiring underwriters to relinquish their constitutional rights as a condition of doing business in

---

[9] United Nations Environment Programme Finance Initiative, *Net-Zero Banking Alliance*, https://www.unepfi.org/net-zero-banking/ (last visited Jan. 30, 2025).

[10] Office of the Attorney General of Texas, *All Bond Counsel Letter* (dated Nov. 1, 2023), at 3.

[11] *Id.*; *see also* Office of the Attorney General of Texas, *News Release—Paxton and Normangee ISD Announce Settlement with UBS to Compensate School District Over State Pro-Energy Law* (dated May 12, 2023), https://www.texasattorneygeneral.gov/news/releases/paxton-and-normangee-isd-announce-settlement-ubs-compensate-school-district-over-state-pro-energy (last visited Jan. 30, 2025).

[12] Office of the Attorney General of Texas, *Press Release—Attorney General Ken Paxton Announces Barclays' Ineligibility to Participate in Texas's Bond Market For its Inability to Verify its "ESG" Policies Do Not Violate Texas Law* (dated Jan. 26, 2024), https://www.texasattorneygeneral.gov/news/releases/attorney-general-ken-paxton-announces-barclays-ineligibility-participate-texass-bond-market-its (last visited Jan. 30, 2025).

Texas constitutes "compulsion or constraint," *City of Austin v. Paxton*, 943 F.3d 993, 1000 (5th Cir. 2019), and will continue to adversely impact Harris County and other local government entities in Texas by limiting their ability to select underwriters that offer quality services at a competitive price. That lack of competition, in turn, increases costs for taxpayers and restricts the ability of counties and other local government entities to effectively serve their residents.

**II.  SB 13 is unconstitutionally vague.**

Plaintiff challenges SB 13 on several grounds, including that its provisions are unconstitutionally vague in violation of the Due Process Clause of the Fourteenth Amendment. Pl.'s Mot. for Part. Summ. J. at 16–19. In determining whether a law is impermissibly vague, courts look at two factors, asking whether the law: (1) "give[s] the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly"; and (2) "provides explicit standards for those applying [it] to avoid arbitrary and discriminatory applications." *Roark & Hardee LP v. City of Austin*, 522 F.3d 533, 551 (5th Cir. 2008) (citing *Grayned v. City of Rockford*, 408 U.S. 104, 108–09 (1972)). Both factors demonstrate SB 13's unconstitutional vagueness.

Under the statute, the Comptroller compiles a blacklist of financial companies that "boycott energy companies," Tex. Gov't Code § 809.051(a), and as noted above, that blacklist is used in connection with the enforcement of the Procurement Provision, which restricts contracts entered into by counties and other local government entities in Texas. But SB 13's definitions of "boycott" leave local governments in the dark as to what the law actually prohibits. SB 13 labels a company a boycotter if it "refus[es] to deal with," "terminat[es] business activities with," or "otherwise tak[es] any action that is intended to penalize, inflict economic harm on, or limit commercial relations with a company" related to fossil fuels. *Id.* § 809.001(1); *id.* § 2276.001. Such practices

6

are only allowed if conducted "without an ordinary business purpose," a term that is not defined or explained anywhere in the statute. *Id.* § 809.001(1); *id.* § 2276.001.

Taking the second factor first, SB 13's lack of definitions enables the Comptroller and Attorney General to adopt "arbitrary and discriminatory applications" of the law. *Roark & Hardee LP*, 522 F.3d at 551. Indeed, the Comptroller has stated that the statutory definition of boycotting differs from its dictionary meaning, Pl.'s First Am. Compl. ¶ 96, and has suggested that the "any action" clause allows him to rely on information outside of companies' questionnaires—including from undefined sources—without disclosing any reasoning, *see id.* ¶¶ 74–75, 83–87. Similarly, the statute's "ordinary business purpose" exception is entirely undefined, leaving its application up to the Comptroller, who has already suggested arbitrary guidelines. *See id.* ¶¶ 65–71 (suggesting that companies may be blacklisted for adopting strategies to minimize investment risk or adhering to clients' requests); ¶ 83 (suggesting that companies may be blacklisted for complying with applicable law).

SB 13 fares no better when the first unconstitutional vagueness factor is considered. The law plainly denies the public a "reasonable opportunity to know what is prohibited [and] act accordingly." *Roark & Hardee LP*, 522 F.3d at 551. In particular, counties and other local government entities do not know what information the Comptroller uses to determine whether a company is in violation of SB 13's "any action" clause. Given the lack of clarity and potential for arbitrary enforcement, counties are subject to significant uncertainty about whether companies are acting within the "ordinary business purpose" exception or not. Because the Comptroller's guidance has not remedied this vagueness, Harris County and other counties are left unsure as to whether potential procurement partners are off-limits under SB 13. *See Roark & Hardee LP*, 522

7

F.3d at 553 (explaining that when examining disputed language, a court "must, of course, consider any limiting construction that [an] enforcement agency has proffered").

Because SB 13 lacks explicit statutory guideposts, counties cannot predict whether companies under consideration for procurement purposes have run afoul of its prohibitions, even when those companies have been longstanding partners in matters such as bond issuances. The result is a chilling effect on county procurement activities. Due to the potential for significant financial and administrative harm to local government entities that guess wrong, there is a strong incentive for entities to adhere to the Comptroller's blacklist and the Attorney General's pronouncements.

SB 13's vagueness increases counties' procurement costs, at taxpayers' expense. For example, Harris County now hires two dealers on bond deals instead of the usual practice of hiring only one.[13] The county adopted this new practice, despite the additional work and financial cost it imposes, because it cannot predict whether the Comptroller or Attorney General will declare any given dealers ineligible under SB 13.[14] The financial impact of SB 13's vagueness is very real.

## CONCLUSION

For these reasons, *amicus* respectfully urges this Court to grant Plaintiff's motion for partial summary judgment.

---

[13] Amanda Albright, *Texas Muni Borrowers Bemoan Anti-ESG Laws Restricting Banks*, Bloomberg News (Apr. 16, 2024), https://www.yahoo.com/news/texas-muni-borrowers-bemoan-anti-185524647.html.

[14] *Id.*

8

| | |
|---|---|
| Dated: February 17, 2025 | Respectfully submitted, |

                                                    **CHRISTIAN D. MENEFEE**
HARRIS COUNTY ATTORNEY

**JONATHAN G.C. FOMBONNE**
DEPUTY COUNTY ATTORNEY AND FIRST ASSISTANT

**TIFFANY S. BINGHAM**
MANAGING COUNSEL,
AFFIRMATIVE & SPECIAL LITIGATION DIVISION

*/s/ Christopher Garza*
**CHRISTOPHER GARZA**
Deputy Division Director
Texas Bar No. 24078543
1019 Congress Plaza, 15th Floor
Houston, Texas 77002
Telephone: (713) 274-5101
Facsimile: (713) 755-8924
Christopher.Garza@harriscountytx.gov

**EDWARD D. SWIDRISKI III**
Senior Assistant County Attorney
Texas Bar No. 24083929
Edward.Swidriski@harriscountytx.gov

**NINA L. M. OISHI**
Assistant County Attorney
Texas Bar No. 24142250
Nina.Oishi@harriscountytx.gov

**OFFICE OF THE HARRIS COUNTY ATTORNEY**
1019 Congress Plaza, 15th Floor
Houston, Texas 77002
Telephone: (713) 274-5101
Facsimile: (713) 755-8924

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing document was filed electronically on February 17, 2025, with the Clerk of the Court of the U.S. District Court for the Western District of Texas by using the CM/ECF system, causing electronic service upon all counsel of record.

*/s/ Christopher Garza*
**CHRISTOPHER GARZA**
Deputy Division Director