IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| **AMERICAN SUSTAINABLE BUSINESS COUNCIL,**<br>    *Plaintiff,*<br><br>    *v.*<br><br>**GLENN HEGAR, in his official capacity as Texas Comptroller of Public Accounts; and KEN PAXTON, in his official capacity as Attorney General of Texas,**<br>    *Defendants.* | 1:24-CV-01010-ADA |

**MEMORANDUM OPINION AND ORDER GRANTING**
**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT (DKT. 39)**

In June 2021, the Texas Legislature enacted Senate Bill 13 ("SB 13"). The law prohibits covered state entities from investing in or contracting with companies that "boycott" fossil fuels.

Before the Court is Plaintiff American Sustainable Business Council's ("ASBC") Motion for Partial Summary Judgment ("the Motion"), filed on January 24, 2025. Dkt. 39. Defendants Glenn Hegar and Ken Paxton ("Defendants") filed their Response to the Motion on February 28, 2025. Dkt. 42. Plaintiff filed their Reply in Support on April 4, 2025. Dkt. 43. The Court heard oral argument on the Motion on June 18, 2025. Dkt. 47.

Having considered the Motion, the Response, the Reply, and oral argument from the parties, the Court hereby **GRANTS** the Plaintiff's Motion for Partial Summary Judgment.

**I.     Background**

In 2021, the Texas Legislature passed Senate Bill 13. SB 13 contains two provisions pertinent to this lawsuit: the Divestment Provision and the Procurement Provision. The Divestment

1

Provision prohibits certain state investment funds[1] from investing in, and requires them to divest from, financial companies that "boycott energy companies." Tex. Gov't Code §§ 809.053(d), 809.057. "Boycott energy company" is defined to mean:

> [W]ithout an ordinary business purpose, refusing to deal with, terminating business activities with, or otherwise taking any action that is intended to penalize, inflict economic harm on, or limit commercial relations with a company because the company:
>
> (A) engages in the exploration, production, utilization, transportation, sale, or manufacturing of fossil fuel-based energy and does not commit or pledge to meet environmental standards beyond applicable federal and state law; or
> (B) does business with a company described by Paragraph (A).

*Id.* § 809.001(1).

To identify boycotters, SB 13 requires the Comptroller to make a list (the "blacklist") of all financial companies that "boycott energy companies." *Id.* § 809.051(a). In so doing, the Comptroller may "rely . . . on publicly available information" (including from "nonprofit[s]" and "research firms") and may "request written verification" from financial companies that they do not boycott energy companies. *Id.* § 809.051(a)(1). If a company provides a "written response" to the request, the Comptroller "may"—but is not required to—"rely, as appropriate" on the response in deciding whether the company is boycotting an energy company. *Id.* § 809.051(a)(2). A financial company that fails to provide such verification within 60 days "is presumed to be boycotting energy companies." *Id.* § 809.051(b). Once the blacklist is compiled, the Comptroller must provide it to the State Funds subject to the Divestment Provision. *Id.* § 809.051(a). Those funds generally

---

[1] Referred to as "state governmental entit[ies]" by SB 13, these funds are: (A) the Employees Retirement System of Texas; (B) the Teacher Retirement System of Texas; (C) the Texas Municipal Retirement System; (D) the Texas County and District Retirement System; (E) the Texas Emergency Services Retirement System; and (F) the permanent school fund. Tex. Gov't Code § 809.001(7).

2

must then divest from any listed companies that do not "cease boycotting" after a 90-day warning. *Id.* § 809.053(b).

Once a determination is made that a financial company is "boycott[ing] fossil-fuel based energy compan[ies]," as defined by Tex. Gov't Code § 809.001(1) (the "Divestment Provision"), then the respective state governmental entity, after giving notice to the financial company and within 90 days of providing the notice, shall "sell, redeem, divest, or withdraw all publicly traded securities of the financial company" unless that divestment would "likely result in a loss in value or benchmark deviation." *Id.* §§ 809.053(d), 809.054(a).

Further, if a company is determined to be "boycott[ing] fossil-fuel-based energy companies" under Tex. Gov't Code § 809.001, then a vendor with 10 or more full-time employees seeking a contract in excess of $100,000.00 paid from the public funds of the governmental entity must verify that it will not boycott fossil-fuel based energy companies during the life of the contract. *Id.* § 2276.001, et seq. (the "Procurement Provision").

ASBC is a membership organization that represents over 200,000 businesses in advocating for and advancing sustainable business practices. Dkt. 39-1, Taylor Decl., ¶¶ 2, 4–5. That membership includes companies that sell the types of goods and services that state and local governments buy. The funds of two ASBC companies, Etho Capital LLC ("Etho") and Our Sphere, Inc. ("Sphere"), were blacklisted for "boycotting energy companies." Dkt. 39-1, Taylor Decl., ¶ 8. These two companies—like other ASBC members—advocate against reliance on fossil fuels. For example, Etho joined a 2019 "Global Climate Strike" and Sphere participated in a "Virtual March to Retire Big Oil" in 2024. Dkt. 39-2, Freeman Decl., ¶ 23; Dkt. 39-3, Wright-Gladstein Decl., ¶ 14.

On January 24, 2025, Plaintiff moved for partial summary judgment on Counts One, Two, and Three of Plaintiff's First Amended Complaint (Dkt. 28). Dkt. 39 at 2. Count One alleges that the Divestment Provision of SB 13 violates the First Amendment. Dkt. 28 at 38. Count Two alleges that the Divestment Provision is unconstitutionally vague in violation of the Fourteenth Amendment's Due Process Clause. Dkt. 28 at 39. Count Three alleges that the Procurement Provision of SB 13 violates the First Amendment. Dkt. 28 at 39. Further, the Motion requests a declaration that SB 13 is unconstitutional and seeks to enjoin Defendants from implementing and enforcing SB 13, as codified at Tex. Gov't Code §§ 809.001–809.102 and Tex. Gov't Code §§ 2276.001–2276.002. Dkt. 39-6 at 1.

## II.     Legal Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Tolan v. Cotton*, 572 U.S. 650, 656–57 (2014). A material fact will have a reasonable likelihood to affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is not genuine if the trier of fact could not, after an examination of the record, rationally find for the non-moving party. *Matsushita Elec. Indus., Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). As such, the burden of demonstrating a lack of a genuine dispute of material fact lies with the movant. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

A court must view the movant's evidence and all factual inferences from such evidence in a light most favorable to the party opposing summary judgment. *Impossible Elecs. Techniques v. Wackenhut Protective Sys., Inc.*, 669 F.2d 1026, 1031 (5th Cir. 1982). Once the court determines that the movant has presented sufficient evidence that no genuine dispute of material fact exists, the burden of production shifts to the party opposing summary judgment. *Matsushita*, 475 U.S. at

586. The non-moving party must demonstrate a genuinely disputed fact by identifying materials in the record, such as affidavits, declarations, stipulations, admissions, interrogatory answers, or other materials; or by showing that the materials cited by the movant do not establish the absence of a genuine dispute. Fed. R. Civ. P. 56(c)(1)(A)–(B). "Conclusory allegations unsupported by concrete and particular facts will not prevent an award of summary judgment." *Duffy v. Leading Edge Prods.*, 44 F.3d 308, 312 (5th Cir. 1995).

### III.    Discussion

#### A.   Plaintiffs have associational standing to challenge SB 13.

Defendants contest ASBC's standing to challenge SB 13. Dkt. 42 at 9. The Supreme Court has held associational standing appropriate when: "(a) [the association's] members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977). An individual member must demonstrate an "injury in fact," that is "fairly traceable to the challenged action of the defendant," and "that a favorable decision will redress the injury." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).

ASBC satisfies the three-part test for associational standing to bring its First Amendment and vagueness claims against the Divestment Provision (Counts One and Two). First, ASBC's members—Etho Capital and Sphere—independently meet the Article III standing requirements of injury, traceability and redressability. *Hunt*, 432 U.S. at 343; *La Union del Pueblo Entero v. Abbott*, 751 F.Supp.3d 673, 706 (W.D. Tex. 2024). Both Etho Capital and Sphere have standing to bring the First Amendment claims against the Divestment Provision because they have been blacklisted under SB 13's definition of "boycotting," which forces them to choose between their First

5

Amendment rights and the ability to compete for and receive investments from the State. Dkt. 39-2, Freeman Decl., ¶¶ 24, 26; Dkt. 39-3, Wright-Gladstein Decl., ¶¶ 19, 21; *see Abdullah v. Paxton*, 65 F.4th 204, 210 (5th Cir. 2023) (holding that standing requires "a violation of [the plaintiff's] own personal rights"). Additionally, Etho Capital and Sphere are injured by the vague definition of "boycott" because they do not know how to get off the blacklist. Dkt. 39-2, Freeman Decl., ¶ 29; Dkt. 39-3, Wright-Gladstein Decl., ¶ 23. These injuries are traceable to Defendants' creation and enforcement of the blacklist and would be redressed by an order that declares SB 13 unconstitutional and enjoins Defendants from blacklisting ASBC's members and otherwise interpreting or enforcing SB 13. Dkt. 37, at 4–5.

Second, the interests that ASBC "seeks to protect"—its members' ability to advocate for and engage in activities that reduce reliance on fossil fuel—are "germane" to ASBC's mission of encouraging sustainable investing and business practices. *Hunt*, 432 U.S. at 343; Dkt. 39-1, Taylor Decl., ¶¶ 4–6. Finally, ASBC's members need not participate in this lawsuit because ASBC seeks only prospective and injunctive relief, not individualized damages. *Hunt*, 432 U.S. at 343; *Consumer Data Indus. Ass'n v. Texas*, No. 21-51038, 2023 WL 4744918, at *4 n.7 (5th Cir. July 25, 2023); Dkt. 28 at 1.

ASBC also has standing to bring a First Amendment challenge to SB 13's Procurement Provision (Count Three) as a facial challenge to a "restriction of expression*." Fairchild v. Liberty Indep. Sch. Dist.*, 597 F.3d 747, 754 (5th Cir. 2010). When evaluating facial challenges to restrictions of expression, the Court may "relax the prudential limitations and allow yet-unharmed litigants to attack potentially overbroad statutes—'to prevent the statute from chilling the First Amendment rights of other parties not before the court.'" *Fairchild*, 597 F.3d at 754 (quoting *Secretary of Md. v. Joseph H. Munson Co*., 467 U.S. 947, 956–58 (1984)); see also *Amawi v.*

6

*Pflugerville Indep. Sch. Dist.*, 373 F. Supp. 3d 717, 740–41 (W.D. Tex. 2019), vacated and remanded sub nom., *Amawi v. Paxton*, 956 F.3d 816 (5th Cir. 2020) ("In the First Amendment context, . . . plaintiffs are neither required to formally submit a contract nor have a contract rejected to have standing") (vacated on jurisdictional grounds).

B. **SB 13 is facially overbroad.**

ASBC challenges SB 13 as being both overbroad and unconstitutionally vague. Where a plaintiff asserts both vagueness and overbreadth, the "first task is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct." *Fairchild v. Liberty Indep. Sch. Dist.*, 597 F.3d 747, 755 (5th Cir. 2010) (quoting *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494 (1982)).

SB 13 violates the First Amendment because it is facially overbroad. A statute is overbroad when it purports to burden only non-constitutionally protected activities, but "includes within its scope activities which are protected by the First Amendment." *Hill v. City of Hous., Tex.*, 764 F.2d 1156, 1161 (5th Cir. 1985). The overbreadth doctrine requires the Court to determine whether the statute "might be applied to others not before the court whose activities are constitutionally protected." *Id.* at 1163. "Showing a law punishes a substantial amount of protected free speech, judged in relation to the statute's plainly legitimate sweep, suffices to invalidate all enforcement of that law." *Woodlands Pride, Inc. v. Paxton*, 694 F. Supp. 3d 820, 847 (S.D. Tex. 2023) (citing *Virginia v. Hicks*, 539 U.S. 113, 115 (2003)).

Defendants claim that the statute is limited by its terms to only commercial conduct, unprotected by the First Amendment. Dkt. 42 at 1. But this is not so. SB 13's definition of "boycott energy companies" permits the State to penalize companies for all manner of protected expression concerning fossil fuels. Under the statute, "boycotting" includes "taking any action that is intended

7

to penalize, inflict economic harm on, or limit commercial relations with" a company in the fossil fuel industry or that does business with such a company. Tex. Gov't Code § 809.001(1). Although the overbreadth doctrine is "strong medicine," *Hill*, 764 F.2d at 1162, that medicine is warranted here. As was true of the ordinance in *Hill*—which made it "unlawful for any person . . . in any manner to oppose . . . any policeman in the execution of his duty"—SB 13's "any action" clause "affects a broad range of protected activities." 764 F.2d at 1163 (emphasis in original). The plain meaning of the phrase "taking any action that is intended to penalize" fossil fuels includes, for example, speaking about the risks posed by fossil fuels, advocating against reliance on fossil fuels, and associating with like-minded organizations—all forms of expression in which ASBC's members, including Etho and Sphere, regularly engage. Dkt. 39-2, Freeman Decl., ¶¶ 16–24; Dkt. 39-3, Wright-Gladstein Decl., ¶¶ 8, 12–19. These "form[s] of speech or conduct" are constitutionally protected. *See NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 907 (1982).

Judge Pitman held that an identical provision in Texas's "boycott Israel" law "by its terms" applied to "expressive" activity and was "overbroad in its restriction of protected speech." *Amawi*, 373 F. Supp. 3d at 745, 752 (granting preliminary injunction); Tex. Gov't § 808.001(1) (defining "Boycott Israel"). The Southern District of Texas came to the same conclusion. *A & R Eng'g & Testing, Inc. v. City of Hous.*, 582 F. Supp. 3d 415, 431 (S.D. Tex. 2022) (holding Texas's "boycott Israel" law violated corporation's First Amendment rights), *rev'd and remanded sub nom.*, *A & R Eng'g & Testing, Inc. v. Scott*, 72 F.4th 685 (5th Cir. 2023) (reversed on jurisdictional grounds). That statute contained a clause identical to SB 13 prohibiting "any action that is intended to penalize, inflict economic harm on, or limit commercial relations" with Israel. In interpreting that clause, the court observed: "it is difficult, if not impossible, to see how 'any action' is limited to conduct outside the purview of the First Amendment." *Id.* at 431–32. The same is true here.

SB 13's application to protected speech is "substantial," both in absolute terms and "in relation to the statute's plainly legitimate sweep." *United States v. Stevens*, 559 U.S. 460, 473 (2010). For this reason alone, the law is unconstitutional and unenforceable. *See Hill*, 764 F. 2d at 1161.

C. **SB 13 is unconstitutionally vague.**

Having concluded that SB 13 is overbroad, the Court now considers whether the law is unconstitutionally vague. A law is unconstitutionally vague in violation of the Due Process Clause when it "either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application." *Cramp v. Bd. of Pub. Instruction of Orange County, Fla.*, 368 U.S. 278, 287 (1961).

> In evaluating vagueness, a reviewing court should consider: (1) whether the law "give[s] the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly;" and (2) whether the law provides explicit standards for those applying them to avoid arbitrary and discriminatory applications.

*Roark & Hardee LP v. City of Austin*, 522 F.3d 533, 551 (5th Cir. 2008) (citation omitted).

Where, as here, the statute reaches "expression sheltered by the First Amendment, the [vagueness] doctrine demands a greater degree of specificity than in other contexts." *Smith v. Goguen*, 415 U.S. 566, 573 (1974). SB 13 is thus unconstitutionally vague because (1) the statute's definition of "boycott energy company" fails to provide a reasonable opportunity to know what conduct is prohibited and (2) the definition invites—and has in fact already led to—discriminatory enforcement.

SB 13's "boycotting" definition is comprised of three clauses, all of which are undefined and not susceptible to objective measurement or determination: (1) "refusing to deal with [fossil fuel energy companies]," (2) "terminating business activities with [fossil fuel energy companies]," and (3) "or otherwise taking any action that is intended to penalize, inflict economic harm on, or

9

limit commercial relations with [fossil fuel energy companies]." Tex. Gov't Code § 809.001(1). The definition of "boycott" also excludes any action falling within any of these clauses if it was taken pursuant to an "ordinary business purpose." *Id.*

Begin with the third clause, which is unclear because the expansive phrase "taking any action" is unlimited and vague. The term "penalize" could "easily appl[y] to political speech intending to persuade others to economically boycott or otherwise 'penalize' [fossil fuel companies]." *Amawi*, 373 F. Supp. 3d at 756. "[A]ny action that is intended to penalize" could mean anything from inflicting direct economic harm on an energy company, to participating in the 2019 Global Climate Strike, Dkt. 39-2, Freeman Decl., ¶ 23, or publicly advocating for climate-positive laws, Dkt. 39-2, Wright-Gladstein Decl., ¶ 8.

The other two clauses are similarly unclear. As is true of "penalize," the phrase "limit commercial relations" could "reasonably be interpreted" to include "[p]ublic speech which advocates for a boycott of [energy companies] and calls on others to engage in [fossil fuel boycotts]." *Martin*, 540 F. Supp. 3d at 1232 (declining to dismiss claim that a similar phrase in an analogous Boycott Israel law was vague). "[L]imit[ing] commercial relations" is additionally vague because it could mean merely ceasing ongoing business or it could also include refraining from new business, reducing the amount of business, or other decisions. Tex. Gov't Code § 809.001(1).

This is particularly puzzling when read with the law's "ordinary business purpose" exception. Tex. Gov't Code § 809.001(1). Although SB 13 excludes actions taken pursuant to "an ordinary business purpose" from its "boycotting" definition, the Comptroller has blacklisted companies that asserted their actions were driven by one or more ordinary business purposes. *See, e.g.*, Dkt. 39-5, Fried Decl., Ex. 1 at 6–8; Dkt. 39-5, Fried Decl. Ex., 2 at 14–16; Dkt. 39-5, Fried

Decl., Ex. 3 at 4; Dkt. 39-5, Fried Decl., Ex. 7 at 3; Dkt. 39-5, Fried Decl., Ex. 8 at 1–2. This runs counter to Defendants' contention that Plaintiffs' conduct "falls squarely within the [statute]." Dkt. 42 at 14.

Moreover, the Comptroller provided no explanation for why he determined those statements were not reliable. *See* Tex. Gov't Code §§ 809.006, 809.051(a)(2). But the Comptroller has publicly stated that companies can be removed from the blacklist if they discontinue their membership with associations that advocate for sustainable investing (and other sustainability measures). Dkt. 39-5, Fried Decl., Ex. 17 at 5. It is admittedly difficult to imagine what sort of conduct is both not an "ordinary business purpose" and not an expression protected by the First Amendment, such that that conduct could fall within SB 13's "boycott" definition. Because SB 13's uncertain terms "abut[] upon sensitive areas of basic First Amendment freedoms, it operates to inhibit the exercise of those freedoms" by leading "citizens to steer far wider of the unlawful zone than if the boundaries of the forbidden areas were clearly marked." *Grayned v. City of Rockford*, 408 U.S. 104, 109 (1972) (quotations omitted) (cleaned up). The Comptroller's discriminatory and arbitrary implementation of SB 13 demonstrates its vagueness.

SB 13 is impermissibly vague in violation of the Fourteenth Amendment because it fails to provide persons of ordinary intelligence a reasonable opportunity to know what conduct is prohibited and does not provide explicit standards for determining compliance with the law. Thus, the law is unconstitutional and unenforceable.

IV. **Conclusion**

Having considered the submissions and arguments of the Parties, the Court hereby **GRANTS** Plaintiff's motion for partial summary judgment on Counts One, Two, and Three. It is further **DECLARED** that SB 13 is unconstitutional under the First and Fourteenth Amendments

of the United States Constitution and **ORDERED** that Defendants are enjoined from implementing or enforcing SB 13, as codified at Tex. Gov't Code §§ 809.001–809.102 and Tex. Gov't Code §§ 2276.001–2276.002.

SIGNED and ORDERED this 3rd day of February, 2026.

_____
ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE