**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | | |
|---|---|---|
| AMERICAN SUSTAINABLE BUSINESS COUNCIL, *Plaintiff*, | § § § § § § | |
| *v.* | § § § | **1:24-CV-01010-ADA** |
| KELLY HANCOCK, in his official capacity as Texas Comptroller of Public Accounts; and KEN PAXTON, in his official capacity as Attorney General of Texas, *Defendants*. | § § § § § § § § | |

## ORDER DENYING MOTION TO STAY PENDING APPEAL

Before the Court is State Defendants' Opposed Motion to Stay Pending Appeal. Dkt. 55. On February 4, 2026, the Court entered an order enjoining State Defendants' Texas Attorney General Ken Paxton and Texas Comptroller Kelly Hancock (then Glenn Hegar)[1] from enforcing Texas Senate Bill 13 ("SB 13"). Dkt. 50. On February 27, 2026, the State Defendants filed a request seeking to stay the Court's injunction pending appeal. Dkt. 55. On March 13, 2026, Plaintiff American Sustainable Business Council ("ASBC") filed their Response. Dkt. 57. Having considered the parties' briefing, as well as the applicable facts and law, the Court hereby **DENIES** State Defendants' Opposed Motion to Stay Pending Appeal.

### I.    Legal Standard

In deciding whether to grant or deny a motion for a stay pending appeal, courts must consider four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3)

---

[1] Mr. Hancock was appointed to be the Acting Texas Comptroller, effective July 1, 2025. He is substituted as a party for Glenn Hegar, who stepped down as Texas Comptroller to become the Chancellor of Texas A&M University. *See* Fed. R. Civ. P. 25(d).

whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *United States v. Texas*, 97 F.4th 268, 274 (5th Cir. 2024) (quoting *Nken v. Holder*, 556 U.S. 418, 434 (2009)). The third and fourth prongs of the standard "merge when the Government is the opposing party." *Id*. at 435. "A stay pending appeal 'is not a matter of right, even if irreparable injury might otherwise result.'" *Id*. at 274 (quoting *Nken*, 556 U.S. at 427). The party requesting the stay bears the burden of establishing that a stay is justified. *Nken*, 556 U.S. at 434.

## II.    Discussion

### a.  Likelihood of Success

#### 1.  The State as a Market Participant or Regulator

State Defendants argue that SB 13 concerns Texas's ability to operate "as a market participant rather than a regulator." Dkt. 55 at 10. Thus, they say, this Court's findings that SB 13 violates the First and Fourteenth Amendments were wrongly analyzed as regulating private conduct. *Id.*

In support of this position, State Defendants draw the Court's attention to *National Association of Diversity Officers in Higher Education v. Trump*, 167 F.4th 86 (4th Cir. 2026) ("*NADOHE*"). But this case is neither binding nor directly on point. The *NADOHE* court's decision was a narrow one, focused on the language of an Executive Order's certification provision regarding diversity, equity, and inclusion initiatives. *Id.* at 94. In finding that the plaintiffs in that case were unlikely to succeed on their First Amendment claims, the court held that the order did not target protected expression because it "require[d] only that plaintiffs certify compliance with federal antidiscrimination laws, which the First Amendment doesn't confer a right to violate." *Id*. at 103.

Contrast this with SB 13's plain language. The statute targets organizations that "*boycott* energy companies." Tex. Gov't Code § 809.001(1) (emphasis added). And the definition of "boycott energy companies" specifically exempts companies which act pursuant to "an ordinary business purpose." *Id.* Moreover, as the *NADOHE* court acknowledged, the government's latitude in choosing how it spends money is not limitless. *NADOHE*, 167 F.4th at 103. "[E]ven in the provision of subsidies, the Government may not aim at the suppression of dangerous ideas." *Nat'l Endowment for the Arts v. Finley*, 524 U.S. 569, 587 (1998).

Even if one accepts that Texas is acting as a "market participant" through SB 13, the statute's language makes clear its intent to disfavor organizations with certain viewpoints. *See* Dkt. 55 at 10. By its own terms, the statute targets companies that "refuse to deal with," "terminate business activities with," or "take any action that is intended to penalize . . . [fossil fuel companies]." Tex. Gov't Code § 809.001(1). Curiously, though, it makes an exception for those actions only when taken for an "ordinary business purpose." *Id.* So, the statute only targets companies when they are *not* engaged in commercial activity. This indicates that the statute is designed to respond to organizations' advocacy, rather than regulate their commercial conduct. For this reason, the State Defendants are unlikely to succeed on the merits of their challenge.

### 2. Standing

State Defendants argue that ASBC does not have standing to sue. Dkt. 55 at 11. The Supreme Court has held associational standing appropriate when: "(a) [the association's] members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977). An individual member must

demonstrate an "injury in fact," that is "fairly traceable to the challenged action of the defendant," and "that a favorable decision will redress the injury." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61 (1992).

Here, two of Plaintiff ASBC's associated members—Our Sphere ("Sphere") and Etho Capital ("Etho")—have standing to bring a First Amendment challenge against SB 13's Divestment Provision in their own right. *Hunt*, 432 U.S. at 343; *La Union del Pueblo Entero v. Abbott*, 751 F.Supp.3d 673, 706 (W.D. Tex. 2024). This is because they have been blacklisted under SB 13's definition of "boycotting," which forces them to choose between their First Amendment rights and the ability to compete for and receive investments from the State. Dkt. 39-2, Freeman Decl., ¶¶ 24, 26; Dkt. 39-3, Wright-Gladstein Decl., ¶¶ 19, 21; *see Abdullah v. Paxton*, 65 F.4th 204, 210 (5th Cir. 2023) (holding that standing requires "a violation of [the plaintiff's] own personal rights"). Additionally, Etho Capital and Sphere are injured by the vague definition of "boycott" because they do not know how to get off the blacklist. Dkt. 39-2, Freeman Decl., ¶ 29; Dkt. 39-3, Wright-Gladstein Decl., ¶ 23. These injuries are traceable to Defendants' creation and enforcement of the blacklist and would be redressed by an order that declares SB 13 unconstitutional and enjoins Defendants from blacklisting ASBC's members and otherwise interpreting or enforcing SB 13. Dkt. 37, at 4–5.

Second, the interests that ASBC "seeks to protect"—its members' ability to advocate for and engage in activities that reduce reliance on fossil fuel—are "germane" to ASBC's mission of encouraging sustainable investing and business practices. *Hunt*, 432 U.S. at 343; Dkt. 39-1, Taylor Decl., ¶¶ 4–6. Finally, ASBC's members need not participate in this lawsuit because ASBC seeks only prospective and injunctive relief, not individualized damages. *Hunt*, 432 U.S.

at 343; *Consumer Data Indus. Ass'n v. Texas*, No. 21-51038, 2023 WL 4744918, at *4 n.7 (5th

Cir. July 25, 2023); Dkt. 28 at 1.

ASBC also has standing to bring a First Amendment challenge to SB 13's Procurement

Provision (Count Three) as a facial challenge to a "restriction of expression." *Fairchild v. Liberty*

*Indep. Sch. Dist.*, 597 F.3d 747, 754 (5th Cir. 2010). When evaluating facial challenges to

restrictions of expression, the Court may "relax the prudential limitations and allow yet-

unharmed litigants to attack potentially overbroad statutes—'to prevent the statute from chilling

the First Amendment rights of other parties not before the court.'" *Fairchild*, 597 F.3d at 754

(quoting *Secretary of Md. v. Joseph H. Munson Co.*, 467 U.S. 947, 956–58 (1984)); *see also*

*Amawi v. Pflugerville Indep. Sch. Dist.*, 373 F. Supp. 3d 717, 740–41 (W.D. Tex. 2019), *vacated*

*and remanded sub nom.*, *Amawi v. Paxton*, 956 F.3d 816 (5th Cir. 2020) ("In the First

Amendment context, . . . plaintiffs are neither required to formally submit a contract nor have a

contract rejected to have standing") (vacated on jurisdictional grounds). For these reasons, the

Court finds the State Defendants are unlikely to succeed on the merits of their challenge to

Plaintiffs' standing to sue.

### b. Irreparable Injury

Plaintiff ASBC argues that staying the Court's injunction would lead to irreparable harm

because members Etho and Sphere would once again be forced to choose between competing for

contracts with the state and their First Amendment rights. Dkt. at 14. The Court agrees with

ASBC and weighs this factor in favor of denying the Defendants' request for stay pending

appeal. State Defendants argue that the State of Texas would be irreparably harmed if the Court's

injunction remains in place. Dkt. 55 at 17. They argue that SB 13's Procurement and Divestment

provisions have been widely adopted throughout the state. *Id*. And they assert that contracts

entered into between state entities and companies while the injunction is in place "*could* become void as a matter of law relatively soon in the event SB 13 is subsequently upheld." *Id.* at 18 (emphasis added).

However, Defendants do not explain the legal mechanism which would or could require the voiding of contracts should this Court's injunction be lifted and SB 13 be upheld; indeed, they provide no legal support whatsoever for this contention. The text of SB 13 does not support this conclusion. When SB 13 took effect, it did not void existing state and local government contracts and require re-bidding of those contracts and awards only to contractors willing to sign the verification. It imposed a prospective requirement that applies at the time a contract is made: that state and local governments "*may not enter* into a contract with a company for goods and services unless the contract contains a written verification . . . ." Tex. Gov't Code § 2274.002(b) (emphasis added); *see also* Senate Rsch. Ctr., Bill Analysis, Tex. S.B. 13, 87th Leg., R.S., § 3 (2021) ("Makes application of Chapter 2274, [the Procurement Provision], . . . as added by this Act, prospective.").

Defendants' concern is far too speculative to establish irreparable injury to Defendants. *See Sheffield v. Bush*, 604 F. Supp. 3d 586, 610 (S.D. Tex. 2022) (concluding that "fear of being held legally liable for any lawsuits" was "too speculative" to establish even a likelihood of irreparable harm). Therefore, should the Fifth Circuit uphold SB 13, that law would not require them to void or alter any existing contracts at that time. The outcome Defendants suggest is also inconsistent with contract interpretation generally. *Cf. Lee v. Hunt*, 631 F.2d 1171, 1178 (5th Cir. 1980) ("[A] pure mistake of law generally cannot excuse contractual obligations.").

If Defendants showed that the Court's order triggered a rule of state law requiring Texas to void existing contracts entered into under SB 13 and that appellant action might cause further

disruption, then Defendants' argument might have merit. But Defendants do not claim that they must void existing contracts at this point, nor do they identify any state law requiring them to as a result of this Court's injunction. Specifically, Defendants do not provide any legal authority suggesting that a reversal of this Court's injunction would require them to retroactively conform contracts to SB 13's requirements. As such Defendants' submission does not provide the Court with an objective, reasonable basis for suggesting that disruptions in state contracting—which is the purported harm supporting the requested stay— will result if the Court's order is not stayed.

Unlike the speculative harms that the State Defendants complain of, ASBC's members Etho and Sphere have demonstrated irreparable harm should the Court grant a stay. Etho and Sphere are injured because they have lost the opportunity to compete for investments from Texas as punishment for exercising their First Amendment rights. *See Hous. Chron. Pub. Co. v. City of League City, Tex.*, 488 F.3d 613, 618–19 (5th Cir. 2007) (newspaper was injured when forced to choose between conducting business and exercising First Amendment rights). "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Students Engaged in Advancing Tex. v. Paxton*, 765 F. Supp. 3d 575, 604 (W.D. Tex. 2025) (quoting *Roman Cath. Diocese of Brooklyn v. Cuomo*, 592 U.S. 14, 19 (2020)).

### c. Service to the Public Interest

"When a statute is enjoined, the State necessarily suffers the irreparable harm of denying the public interest in the enforcement of its laws." *Veasey v. Abbott*, 870 F.3d 387, 391 (5th Cir. 2017) (per curiam). Accordingly, the balance of the equities and public interest "merge when the Government is the opposing party," *Nken*, 556 U.S. at 435.

But "injunctions protecting First Amendment freedoms are always in the public interest." *Book People, Inc. v. Wong*, 91 F.4th 318, 341 (5th Cir. 2024). And "[w]here constitutional rights

are concerned", "enforcement of an unconstitutional law is always contrary to the public interest." *Fund Tex. Choice v. Paxton*, 658 F. Supp. 3d 377, 415 (W.D. Tex. 2023). Every day that SB 13 is in force, ASBC and its members' speech rights are harmed. Accordingly, the public interest favors upholding the injunction.

### III.    Conclusion

Having satisfied none of the *Nken* factors and for the reasons stated above, State Defendants' Motion for a Stay Pending Appeal is **DENIED**.

**SIGNED** this 14th day of April, 2026.

_____
ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE